*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0481p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

　　　　　　　　*Plaintiff-Appellee,*

　　　*v.*

GARY WATKINS,

　　　　　　　　*Defendant-Appellant.*

No. 05-4551

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 04-00119—Algenon L. Marbley, District Judge.

Argued: October 31, 2007

Decided and Filed: December 14, 2007

Before: DAUGHTREY and GILMAN, Circuit Judges; EDMUNDS, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Paul J. Neel, Louisville, Kentucky, for Appellant. Christopher K. Barnes, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Paul J. Neel, Louisville, Kentucky, for Appellant. Christopher K. Barnes, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee. Gary G. Watkins, Terre Haute, Indiana, pro se.

_____

## OPINION

_____

　　　RONALD LEE GILMAN, Circuit Judge. This case arises from Gary Watkins's conviction on multiple counts of armed robbery, conspiracy, and firearms violations. On six different occasions, Watkins and/or his accomplices brandished firearms in the abduction of employees of different banks and cash-lending institutions from their homes in the Columbus, Ohio area. The men took the employees—and in some cases their families—to the employees' respective places of employment and forced them to open safes and vaults. Watkins and his accomplices then fled with the cash they removed. After a jury found Watkins guilty on all counts, the district court sentenced him to 1,772 months in prison.

---

[*] The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

Watkins raises three issues on appeal. First, he challenges his convictions for the robberies of the three cash-lending institutions on the ground that the government failed to prove that those robberies had a *de minimis* effect on interstate commerce as required by the Hobbs Act. He next challenges his sentence, arguing both that imprisonment for 1,772 months violates the Eighth Amendment and that the district court misinterpreted the Sentencing Guidelines. Finally, he argues that he received the ineffective assistance of counsel during sentencing. For the reasons set forth below, we **AFFIRM** the judgment of the district court and **DENY** Watkins's ineffective-assistance-of-counsel claim.

## I. BACKGROUND

### A.    Factual background

In March of 2002, Watkins and Darryl Jones assaulted and abducted James Doyle as he was entering his home near Reynoldsburg, Ohio. Doyle was the owner of three Quick Cash stores in the Columbus, Ohio area. The men held Doyle at gunpoint and tied him up. They eventually took Doyle to one of the Quick Cash stores and forced him to open the safe. Watkins and Jones took approximately $20,000 from the safe, tied Doyle up, and left the store.

In April of 2002, Jones and two other accomplices assaulted and abducted Ronald Williams at his home in Columbus, Ohio. Williams was the branch manager of the Worthington, Ohio branch of Sky Bank. The men took Williams at gunpoint to the bank for the purpose of having him open the bank's vault. When Williams put the code into the vault, however, the bank alarm went off and the men fled without taking any money.

Watkins and Jones broke into the apartment of Tanya and Eric Robinson in Columbus, Ohio in June of 2002. The men wore ski masks and brandished guns. They tied up Eric Robinson and locked him and the Robinsons' children in the bathroom, then took Tanya Robinson to Checkland, where she worked. The men forced Tanya to open the Checkland safe, stole $20,900, and fled.

In December of 2002, Watkins and Jones broke into the home of Deanna McGhee in Columbus, Ohio and abducted her, her husband, and her six-year-old son at gunpoint. The men took the family to Cashland, where Deanna worked. The men forced Deanna to open the safe at gunpoint and then fled with the McGhees' car and approximately $10,800 in cash.

Watkins and Jones abducted Steve Kauff in his car at gunpoint and forced him to drive to his home in Columbus, Ohio in May of 2003. At Kauff's home, the men abducted Kauff's wife, Amanda, and their three young children. The men brandished guns and told the family that they wanted Amanda to help them steal money from the Whitehall Credit Union where she worked. Jones then forced Amanda to drive the family to the credit union. The men put Steve and the children into a separate room, and Watkins took Amanda to open the vault. After Watkins took approximately $145,100 from the credit union vault, the men fled.

In July of 2004, Gary Watkins and Eric Watkins invaded Linda Battaglia's home in Groveport, Ohio and abducted her and her two daughters at gunpoint. The men forced Battaglia and her two children to drive with them to the Western Credit Union where Battaglia worked. Battaglia did not have the combination to the safe, so the men tied up Battaglia and her children and held them in the credit union until a supervisor with the combination to the vault arrived. When Deborah Anderson, the vault supervisor, arrived at the credit union, the men forced her at gunpoint to open the vault. The men took approximately $643,000 from the vault and fled.

### B.          Procedural background

Watkins was indicted in the Southern District of Ohio in December of 2004 on one count of conspiracy to violate the Hobbs Act, in violation of 18 U.S.C. § 1951; on three counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951 and § 2; on one count of conspiracy to commit armed bank robbery, in violation of 18 U.S.C. § 371; on three counts of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d) and § 2; and on six counts of using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). At the end of the government's case, Watkins moved to dismiss all of the charges pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The district court denied Watkins's motion, and the jury found Watkins guilty on all counts. In September of 2005, the district court sentenced Watkins to a term of 1,772 months' imprisonment and five years of supervised release. This timely appeal followed.

## II.  ANALYSIS

### A.          Hobbs Act violations

#### 1.          *Standard of review*

We normally review constitutional challenges to criminal convictions de novo as questions of law. *United States. v. Knipp*, 963 F.2d 839, 843 (6th Cir. 1992). At trial, however, Watkins's attorney did not challenge the sufficiency of the evidence supporting the nexus to interstate commerce in the Hobbs Act robberies at issues in this appeal—namely, Cashland, Checkland, and Quick Cash. We will therefore review Watkins's Hobbs Act challenge under the plain-error standard. Fed. R. Crim. P. 52(b); *see also United States v. Olano*, 507 U.S. 725, 731 (1993) (holding that a plain error may be considered by an appellate court even if the error was not brought to the district court's attention). "To establish plain error, a defendant must show that: (1) an error occurred in the district court; (2) the error was obvious or clear; (3) the error affected defendant's substantial rights; and (4) this adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006) (quotation marks omitted).

#### 2.          *The Hobbs Act*

The Hobbs Act provides that "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion . . . shall be fined . . . or imprisoned." 18 U.S.C. § 1951(a). Federal jurisdiction over Hobbs Act violations is rooted in the Commerce Clause. *United States v. Davis*, 707 F.2d 880, 884 (6th Cir. 1983). "Commerce," for the purposes of the Hobbs Act, includes "all . . . commerce over which the United States has jurisdiction." 18 U.S.C. § 1951(b)(3). As Watkins's counsel conceded at oral argument, the law of this circuit provides that a showing of a *de minimis* connection with interstate commerce satisfies the Hobbs Act where a robbery involves a business entity. *United States v. Davis*, 473 F.3d 680, 681-83 (6th Cir. 2007) (considering and rejecting the argument that the Hobbs Act requires a substantial, as opposed to a *de minimis*, effects test where the robberies are directed against business entities); *United States v. Chance*, 306 F.3d 356, 374 (6th Cir. 2002) (discussing the *de minimis* test as the appropriate standard under the Hobbs Act); *United States v. Peete*, 919 F.2d 1168, 1174 (6th Cir. 1990) (same).

#### 3.          *The district court did not err in finding that Watkins's Hobbs Act robberies had* **a de minimus** *effect on interstate commerce*

The Supreme Court has held that the Commerce Clause provision of the Hobbs Act is extremely broad. *Stirone v. United States*, 361 U.S. 212, 215 (1960) ("[The Hobbs] Act speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish

interference with interstate commerce by extortion, robbery or physical violence."). Proof of a *de minimis* effect on interstate commerce, then, does not require the government to prove that a Hobbs Act robbery had an actual effect on interstate commerce, but only that there was a "realistic probability" of such an effect. *Peete*, 919 F.2d at 1174.

In the present case, the robberies occurred at the location of the abducted employees' places of business. The amount of money stolen and the nature of the businesses targeted make clear that the robberies had at least a *de minimis* effect on interstate commerce. Specifically, Watkins stole: (1) approximately $20,000 from Quick Cash, which was in the business of making small loans, selling money orders, and cashing checks drawn on banks insured by the Federal Deposit Insurance Corporation (FDIC), (2) $10,800 from Cashland, which was essentially in the same business as Quick Cash, and (3) $20,900 from Checkland, which was also in the check-cashing business.

Although the government's evidence on Checkland's nexus to interstate commerce is slim, it is not so lacking that reversal is warranted. This court reached a similar conclusion in the recent case of *United States v. McComb*, 2007 WL 2859743 at *5 (6th Cir. Oct. 3, 2007), where the court found that the evidence establishing that a robbery of one Payless Shoe store had a *de minimis* effect on interstate commerce was sufficient to satisfy the *de minimis* standard with regard to a different Payless Shoe store that was also robbed by the same defendants. The court in *McComb* also determined that the robbery of a business entity that draws checks on nationwide banks has a *de minimis* effect on interstate commerce. *Id.*

All three nonbank entities that Watkins robbed in the present case were check-cashing businesses engaged in interstate commerce in the form of cashing private, business, and government checks. Because the government established that at least one of the cash-checking stores drew checks on nationwide banks, we agree with the district court that a reasonable inference can be drawn that the other two did as well. *See McComb*, 2007 WL 2859743 at *5. The government thus met its burden of establishing that all of Watkins's Hobbs Act robberies had a *de minimis* effect on interstate commerce.

## B.       Sentencing claims

Watkins contests his sentence of 1,772 months' imprisonment on two grounds. First, he argues that his sentence violates the Eighth Amendment prohibition against cruel and unusual punishment because it is grossly disproportionate to the offense. Second, he contends that the district court erred in its interpretation of the Sentencing Guidelines. Because Watkins did not challenge his sentence at the time of his sentencing hearing, the plain-error standard of review is applicable. Fed. R. Crim. P. 52(b); *see also United States v. Olano*, 507 U.S. 725, 731 (1993) (holding that a plain error may be considered by an appellate court even if the error was not brought to the district court's attention).

### 1.       *Watkins's Eighth Amendment claim*

When Watkins was sentenced, his offense level for the six robberies was 36 and his criminal history category was I. At that level, the Guidelines range for sentencing is 188 to 235 months of imprisonment. *See* U.S. Sentencing Guidelines Manual tbl. (2005). The district court sentenced Watkins at the low end of that range and then ran his sentences for the three Hobbs Act robberies and the three armed bank robberies concurrently, for a total of 188 months. Watkins was also sentenced to 188 months on the one count of conspiracy to commit a Hobbs Act robbery and to 60 months on the one count of conspiracy to commit armed bank robbery. The court ordered that both of Watkins's conspiracy sentences run concurrently with his sentences for the six robberies.

Finally, the district court sentenced Watkins to an additional 7 years for brandishing a firearm during the first robbery, in violation of 18 U.S.C. § 924(c), and to 25 years for each count of using

or brandishing a firearm during the other five robberies. The length of the firearm sentences are predetermined by by § 924(c)(1)(C)(i). Pursuant to § 924(c)(1)(D)(ii), the court then ordered that each of the § 924(c) gun convictions run consecutively to the underlying offenses.

Watkins argues that his sentence of 1,772 months is grossly disproportionate punishment when compared to the crimes for which he was convicted. He notes that he did not fire a gun, that no person was physically injured during the robberies, and that his criminal history prior to the robberies was zero. He asserts that his lack of criminal history and the absence of any physical harm to the victims weighs heavily against the imposition of a sentence that will confine him for the remainder of his life.

We are not persuaded, however, by Watkins's arguments. All of his robbery and conspiracy offenses are running concurrently; only his firearms convictions are running consecutively. And as 18 U.S.C. § 924(c) makes clear, firearms convictions may not run concurrently with any other term of imprisonment, including the term of imprisonment imposed for the underlying offense. § 924(c)(1)(D)(ii). This circuit has never held that the consecutive-sentence requirement in § 924(c) is unconstitutional. Moreover, the Supreme Court has held that life sentences for even nonviolent offenses are constitutional. *See, e.g.*, *Ewing v. California*, 538 U.S. 1, 30-31 (2003) (upholding a life sentence under California's three strikes law for the theft of three golf clubs); *Harmelin v. Michigan*, 501 U.S. 957, 994-95 (1991) (upholding a life sentence for possession of 672 grams of cocaine).

As Watkins acknowledges, this circuit rejected the very same Eighth Amendment cruel and unusual argument in *United States v. Beverly*, 369 F.3d 516, 537 (6th Cir. 2004). The defendant in *Beverly* was sentenced to 71.5 years in prison, largely as the result of the same consecutive sentencing requirement contained in 18 U.S.C. § 924(c). *See id.* This circuit has also imposed lengthy sentences in cases involving similar crimes. In *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000), for example, this court upheld sentences of 1,395 and 2,242 months of imprisonment for two defendants who committed six and nine armed bank robberies, respectively.

Although Watkins is correct in arguing that the Eighth Amendment places an outer limit on criminal penalties that are grossly disproportionate to the offense, this is not such a case. *See Solem v. Helm*, 463 U.S. 277, 290 n.16 (1983) (stating that, under the Eighth Amendment, appellate courts may review a sentence to determine if it is within constitutional limits). Watkins was convicted of six separate robberies, each of which involved the brandishing of a firearm. He and/or his accomplices entered the homes of victims by force and threatened to seriously harm or kill not only the victims, but, in multiple cases, their spouses and small children. In light of the numerosity and seriousness of the offenses, the comparable sentences imposed by this circuit in similar circumstances, and the requirement that sentences for § 924(c) firearms convictions run consecutively to all other sentences, Watkins's sentence is not grossly disproportionate to the offenses.

### 2.      *Watkins's Sentencing Guidelines claim*

In the pro se portion of Watkins's petition, he argues that the district court improperly calculated his sentence as a result of misinterpreting Sentencing Guidelines § 2K2.4, Application Note 4. That section instructs district courts not to add the five-level enhancement for use of a firearm pursuant to U.S.S.G. § 2B3.1(b)(2)(C) when calculating the total offense level of an underlying crime of violence. Note 4 makes clear that where § 924(c) convictions are at issue, any enhancement under the Sentencing Guidelines for use of a firearm would result in a double counting of the gun crime. In the present case, however, the district court did not add the five-level enhancement for the use of a firearm when calculating Watkins's offense level. Contrary to Watkins's assertion, therefore, the district court did not misinterpret Note 4 when it calculated his sentence.

**C.        Watkins's ineffective-assistance-of-counsel claim**

An ineffective-assistance-of-counsel claim can be considered on direct appeal where the record is adequately developed to allow the court to assess the merits of the claim. *United States v. Gardner*, 417 F.3d 541, 545 (6th Cir. 2005). Where the record is not adequately developed, the usual course is to defer consideration of the claim to postconviction proceedings under 28 U.S.C. § 2255. *Id.* The parties in the present case agree that the record is adequately developed for review on direct appeal. Based on the narrow focus of Watkins's ineffective-assistance claim, we agree.

To establish a claim of ineffective assistance of counsel, Watkins must show that his trial counsel's performance was objectively deficient and that there is a reasonable probability that the deficiency prejudiced the outcome. *United States v. Carter*, 355 F.3d 920, 924 (6th Cir. 2004). Watkins argues that the performance of his trial attorney was deficient because his counsel failed to argue that the district court misapplied Sentencing Guidelines § 2K2.4, Application Note 4. Because, as discussed above, the district court did not misapply that section of the Sentencing Guidelines, Watkins did not receive ineffective assistance of counsel when his attorney failed to make that argument.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court and **DENY** Watkins's ineffective-assistance-of-counsel claim.