NOT RECOMMENDED FOR PUBLICATION
File Name: 10a0059n.06

Nos. 08-2182, 08-2304

**FILED**
**Jan 28, 2010**
LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| ROBERT McDONEL (08-2182) and | ) | |
| FREDERICK ATKINS (08-2304), | ) | OPINION |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

**Before: SUHRHEINRICH, COLE, and GILMAN**, **Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.** In 2006, 19-year old Robert McDonel and 40-year old Frederick Atkins were among a group of five men engaged in a series of armed robberies. Following a jury trial, both men were convicted on multiple counts of interference with commerce by robbery in violation of the Hobbs Act, 18 U.S.C. § 1951, as well as on multiple counts of brandishing a firearm during the commission of a violent crime in violation of 18 U.S.C. § 924(c). The district court sentenced McDonel to 1,285 months (107 years and one month) in prison and Atkins to 744 months (62 years) of incarceration.

On appeal, Atkins argues that his conviction was against the weight of the evidence. He further contends that the district court erred in denying his motion to sever his trail from that of McDonel and in permitting the prosecution to question Atkins regarding his prior convictions. In addition, both McDonel and Atkins challenge the length of their sentences as constituting cruel and

unusual punishment under the Eighth Amendment.  For the reasons set forth below, we **AFFIRM**

the judgment of the district court.

## I. BACKGROUND

**A.      Robberies**

This case arises out of a two-week crime spree in November 2006 in the Detroit area.  In

total, all but one of the persons responsible were arrested for their participation in the armed

robberies of five separate businesses.

McDonel was involved in all five robberies along with a cohort named Jonnie Cromer.  The

men formulated a plan whereby one of them would scope out the interior of a store and call the other

(or others, when additional accomplices were involved) via cell phone to let them know when the

store had few patrons.  Whoever was waiting outside the store would then enter, and together they

would demand cash from the store employees.  According to Cromer, the plan was to commit

"basic[] in-and-out robberies" for "quick money," and they had no intention of shooting or killing

anybody.  During the robberies, they normally wore masks, "hoodie" sweatshirts, and gloves in an

effort to conceal their identities.

The first robbery, on November 16, 2006, targeted an AutoZone automotive-parts store and

involved only McDonel and Cromer.  Cromer conducted surveillance, and McDonel joined him

inside shortly thereafter, brandishing a .25-caliber handgun.  Cromer drove the get-away car.  They

took approximately $1,500 in cash from the store, which they then divided between the two of them.

On November 20, 2006, McDonel and Cromer robbed a second AutoZone store, this time with the aid of an accomplice named Kenneth Brown. As with the first robbery, Cromer scoped out the store and, at his signal, McDonel and Brown joined him inside, carrying handguns. Cromer again drove the get-away vehicle, and the three men divided up the stolen cash, which totaled somewhere between $1,000 and $1,500.

For the next robbery—of a third AutoZone store—on November 27, 2006, McDonel and Cromer recruited Atkins to take the place of Brown. (Brown did not partake in any of the other three robberies and was later charged in state court.) During this robbery, both Cromer and Atkins surveilled the store, with McDonel entering shortly thereafter, carrying a firearm. McDonel took somewhere between $1,500 and $2,000 in cash and exited the store, with the three men reconvening soon thereafter in the parking lot.

McDonel, Cromer, and Atkins struck again on November 30, 2006, this time targeting a Simply Fashions clothing store. A fourth man, Maurice Woodley, joined the three men and, along with McDonel, drove one of the two vehicles used during the commission of the robbery. Although none of the four men conducted pre-robbery surveillance, Cromer and Atkins entered the store anyway, carrying firearms, and took approximately $200. This take was smaller than in their previous robberies because an armored car had hauled away money from the store's safe just prior to the robbery, leaving only the money in the cash registers available for Cromer and Atkins. Unhappy with this relatively paltry sum, the four men decided to rob another store almost immediately upon reconvening.

The fifth robbery occurred within an hour of the Simply Fashions robbery, with McDonel, Cromer, Atkins, and Woodley targeting a Murray's Discount Auto Store. For this robbery, Cromer and Atkins conducted surveillance, and McDonel and Woodley, upon being signaled by their accomplices inside, entered the store brandishing firearms and took approximately $3,000 in cash.

**B.     Arrests**

By late November 2006, Detroit police were paying "special attention" to the types of stores robbed by McDonel, Cromer, and their three accomplices. Numerous store employees had seen the men and their vehicles, and store security cameras had captured the robberies on videotape, thereby providing the police with limited physical descriptions of the robbers. On December 7, 2006, a call went out over the police radio to be on the lookout for a black male matching McDonel's physical description and wearing the type of clothes that the five men had worn during the robberies. An officer observed McDonel leaning against the wall of a Murray's Discount Auto Store that same day and, noticing that he matched the description provided in the call, approached McDonel and patted him down. When the officer discovered that McDonel was wearing latex gloves similar to those used in the robberies and had a loaded revolver in his coat pocket, he arrested McDonel.

During the interrogations that followed his arrest, McDonel admitted that he had been planning to rob the Murray's Discount Auto Store where he was arrested. McDonel further confessed to having participated in the November 20 and 27 AutoZone robberies.

In the months following McDonel's arrest, Atkins committed three additional armed robberies with Cromer. The two men robbed a Family Dollar Store and a Rite Aid Pharmacy in March 2007, as well as a second Family Dollar Store in April 2007. During a subsequent attempted

robbery of a CVS Pharmacy in April 2007, a store patron punched Atkins in the face and disarmed him, causing Atkins to flee. While running from the store, Atkins dropped his cell phone, which the police used to track down and arrest Atkins the following day.

## C.     Procedural background

McDonel was charged with five counts of interference with commerce by robbery, in violation of 18 U.S.C. § 1951, and five counts of brandishing a firearm during the commission of a violent crime, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Atkins was charged with three counts of each offense. (Atkins was never charged in connection with the three 2007 robberies.) Woodley and Cromer, who had also been arrested, entered guilty pleas to similar counts prior to trial and agreed to testify against McDonel and Atkins in exchange for reduced sentences.

Prior to trial, Atkins filed a motion to sever his trial from that of McDonel, pointing out that the government intended to introduce responses McDonel gave during a police interrogation at the time of his arrest that implicated Atkins in one of the robberies. Atkins contended that presenting these responses to the jury in a joint trial would violate his rights under the Sixth Amendment's Confrontation Clause because McDonel would not be testifying. The district court denied Atkins's motion, but ordered that the responses identifying Atkins as an accomplice be redacted. To prevent calling the jury's attention to the omitted portions, the court further ordered that a redacted version of the interrogation transcript be read to the jury rather than be introduced in written form.

Following a six-day jury trial, McDonel and Atkins were convicted on all counts charged. McDonel was sentenced to 1,285 months in prison, and Atkins was sentenced to 744 months. Both men filed timely appeals.

## II. ANALYSIS

### A.  Overview

On appeal, Atkins argues that (1) his conviction was against the weight of the evidence presented at trial, (2) the district court erred in denying his motion to sever his trial from that of McDonel, (3) the district court impermissibly allowed the prosecution to inquire into his prior convictions, and (4) the length of his sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment.  McDonel's appeal challenges only the length of his sentence.  Each issue is addressed in turn below.

### B.  Sufficiency of the evidence against Atkins

Atkins first contends that the district court erred when it denied his motion for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure.  "[W]here, as here, a defendant does not renew his motion for judgment of acquittal for insufficiency of the evidence at the close of all the proofs, appellate review is limited to determining whether there was a manifest miscarriage of justice."  *United States v. Childs*, 539 F.3d 552, 558 (6th Cir. 2008) (citation and internal quotation marks omitted).  "Such a miscarriage of justice occurs only if the record is devoid of evidence pointing to guilt."  *Id*.  Furthermore, in reviewing the sufficiency of the evidence, we will view the evidence "in the light most favorable to the prosecution."  *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006).

Atkins's claim rests on two contentions.  First, he asserts that the cell phone records introduced by the prosecution that purportedly document discussions between Atkins and his accomplices are too isolated in time and are too short in duration to establish his guilt.  Atkins also

surmises that other people living at his home during the relevant time period might have made the calls. In addition, Atkins highlights various discrepancies in the testimony of Cromer and Woodley in an effort to attack their credibility as witnesses.

Neither of Atkins's arguments is persuasive. Atkins points to no evidence presented at trial to counter the government's showing that the cell phone recovered at the scene of the CVS robbery belonged to him and was used to call McDonel, Cromer, and Woodley in connection with the robberies. And although Atkins identifies inconsistencies in Cromer's and Woodley's testimony (all relating to minor details such as their familiarity with guns, whether they drank vodka before one of the robberies, and how they became involved in the robberies), our role is not to weigh the credibility of witnesses on review. *See United States v. Maliszewski*, 161 F.3d 992, 1006 (6th Cir. 1998) (holding that the appellant's "attack on the credibility of prosecution witnesses gets her nowhere" on appeal because the court "draw[s] all available inferences and resolve[s] all issues of credibility in favor of the jury's verdict"). Nor is the record otherwise devoid of evidence of Atkins's guilt. Both Cromer and Woodley, two of Atkins's accomplices, testified in detail as to his involvement in three of the armed robberies, and they identified Atkins in videotapes of the robberies captured by the stores' security cameras. The district court therefore properly denied Atkins's Rule 29 motion.

## C.     Denial of Atkins's motion to sever trials

Atkins next argues that the district court erred in denying his motion to sever his trial from that of McDonel, contending that the prosecution's use of responses given by McDonel during an interrogation at the time of his arrest was prejudicial. During this interrogation, McDonel confessed to robbing one of the AutoZone stores with another person known as "O.G." (short for "Original

Gangster," a nickname for Atkins). Prior to trial, the district court ruled that those responses in which McDonel identified Atkins as an accomplice would be suppressed, and it further ordered that the redacted interrogation transcript be read into evidence to prevent the jury from knowing about the redactions.

The prosecution then introduced this evidence at trial by having the police officer who conducted the interrogation read for the jury the questions he asked and McDonel's answers. For the first two questions, the prosecutor noted the sequential number of the question asked (i.e., "With regard to the first question you asked, what did you ask him?"), but upon Atkins's objection, the court ordered the prosecutor to refrain from referring to the order of the questions. The court also instructed the jury that the interrogation responses were to be used as evidence against McDonel only. Atkins nonetheless maintains that, despite the court's efforts, he was prejudiced by the inclusion of McDonel's responses.

Regardless of the merits of his argument, the claim is waived because Atkins failed to renew his motion at the close of all the evidence. "A motion to sever counts or co-defendants is deemed waived if it is not renewed at the end of the evidence." *United States v. Harris*, 293 F.3d 970, 975 (6th Cir. 2002) (citation and internal quotation marks omitted). There is no evidence in the record that Atkins's trial counsel renewed his motion at any time, and Atkins makes no such contention in his brief. Atkins has therefore waived this claim on appeal.

**D.      Evidence of Atkins's prior convictions**

In addition to his claims regarding the sufficiency of the evidence and the denial of his motion to sever, Atkins argues that the district court erred in permitting the prosecutor to question

him about his prior convictions for breaking and entering and for armed robbery. The district court

had ruled prior to Atkins's testimony that this evidence was inadmissible under Rule 609 of the

Federal Rules of Evidence. But shortly thereafter, the following exchange occurred between the

prosecutor and Atkins during cross-examination:

> Q. Now, you wouldn't want your face to be seen holding a gun at a robbery scene, would you? I mean, let's be truthful, you wouldn't want that, right?
>
> A. No, sir. I mean, anybody wouldn't want that.
>
> Q. All right. So you can recognize that a ski mask can conceal a person's face, can't you?
>
> A. Yes.
>
> Q. You can recognize—and you wouldn't want your fingerprints to be found at the scene of a crime, right?
>
> A. I guess not. Depends on the scene of the crime.
>
> Q. Oh, so an opportunistic crime, you don't mind your fingerprints being there?
>
> A. I don't do crimes, sir.

The prosecutor then requested permission to question Atkins about his prior convictions. Overruling

trial counsel's objection, the district court reasoned that the prosecutor could inquire into Atkins's

criminal history because Atkins had "opened the door" by providing the voluntary response that "I

don't do crimes."

We review a district court's evidentiary rulings under the abuse-of-discretion standard.

*United States v. Gunter*, 551 F.3d 472, 483 (6th Cir. 2009). Atkins challenges the district court's

ruling under Rule 609(a) of the Federal Rules of Evidence, which provides that "[f]or the purpose of attacking the character for truthfulness of a witness, . . . evidence that an accused has been convicted of [a felony] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." Essentially, Atkins asserts that the prejudicial nature of his past convictions, due to their similarity to the crimes with which he was charged in the present case, outweighs the probative value of these convictions regarding his truthfulness.

But, as the district court found, the probative value of this evidence outweighed its potential prejudice once Atkins "opened the door" to inquiries about the convictions by stating that he did not "do crimes." *See United States v. Chance*, 306 F.3d 356, 385 (6th Cir. 2002) ("[W]here one party has 'opened the door' on an issue, the opponent, in the trial court's discretion, may introduce evidence on the same issue to rebut any false impression that may have been created by the earlier admission of evidence."). The district court therefore did not abuse its discretion in permitting the prosecutor to inquire as to Atkins's prior convictions to rebut Atkins's statement to the effect that he had never been involved in criminal activity.

**E.     McDonel's and Atkins's Eighth Amendment claims**

Finally, McDonel and Atkins challenge their sentences as violating the Eighth Amendment's prohibition against cruel and unusual punishment. Both men were convicted on multiple counts of interference with commerce by threats or violence in violation of the Hobbs Act, 18 U.S.C. § 1951. McDonel received a one-month sentence for each of his five convictions under this statute, with the sentences to run concurrently, and Atkins was sentenced to a 60-month prison term for each of his

three convictions, to run concurrently. (Atkins's sentence was higher because he had two prior burglary convictions and one prior armed robbery conviction.)

In addition, both men were convicted of brandishing a firearm during each of the robberies in violation of 18 U.S.C. § 924(c). The mandatory-minimum sentence under this statute is 7 years for the first conviction and a 25-year *consecutive* sentence for each subsequent conviction. 18 U.S.C. §§ 924(c)(1)(A), (C), (D). Because McDonel was convicted on five counts under § 924, he received an additional 1,284 months, for a total sentence of 1,285 months (107 years and one month). Atkins, who was convicted on 3 counts under § 924, received an additional 684 months, for a total sentence of 744 months (62 years). As specified in § 924(c)(1)(D)(ii), the district court ordered that each of the § 924(c) gun convictions run consecutively.

Both men argue that their sentences amount to cruel and unusual punishment in violation of the Eighth Amendment. McDonel notes his youth at the time of the crime spree as well as the fact that he had no prior felony convictions, never fired his gun during the robberies, and was trying to provide for his girlfriend and their child. Similarly, Atkins emphasizes that because he was 40 years old in 2006, his sentence essentially amounts to a lifetime in prison. He further points out that were he sentenced pursuant to Michigan state law, his sentence would be approximately 40 years less.

Because McDonel and Atkins failed to challenge their sentences at their sentencing hearings, the plain-error standard of review is applicable. *See United States v. Watkins*, 509 F.3d 277, 282 (6th Cir. 2007). We have previously rejected Eighth Amendment challenges to consecutive sentences imposed pursuant to § 924(c). In *Watkins*, for example, the defendant received a 1,772-month prison sentence for his participation in six armed robberies. The district court sentenced Wakins to 188

months of imprisonment for his robbery and conspiracy convictions, and then added an additional 1,584 months pursuant to § 924(c) for the firearms violations. *Id*. This court rejected Watkins's Eighth Amendment claim on appeal, noting that "[t]his circuit has never held that the consecutive-sentence requirement in § 924(c) is unconstitutional." *Id*.

Although we acknowledged that "the Eighth Amendment places an outer limit on criminal penalties that are grossly disproportionate to the offense," Watkins's sentence was "not such a case," given the "numerosity and seriousness of [his] offenses," the consecutive-sentence requirement under § 924(c), and the fact that this court had upheld comparable sentences in similar circumstances. *Id*. at 282-83 (citing *United States v. Beverly*, 369 F.3d 516, 536-37 (6th Cir. 2004) (affirming an 858-month prison sentence resulting largely from convictions pursuant to § 924(c)); *United States v. Marks*, 209 F.3d 577, 581, 583 (6th Cir. 2000) (rejecting Eighth Amendment challenges to sentences of 1,395 and 2,242 months of imprisonment under § 924(c) for two defendants who committed six and nine armed bank robberies, respectively)). Because neither McDonel nor Atkins have presented any contrary authority for departing from this precedent, we reject their Eighth Amendment claims.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.