NOT RECOMMENDED FOR PUBLICATION
File Name:  17a0575n.06

No. 16-6388

FILED
Oct 10, 2017
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| CHRISTOPHER N. BONICK, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |

BEFORE:    KEITH, MCKEAGUE, and STRANCH, Circuit Judges.

 **JANE B. STRANCH, Circuit Judge.**  Christopher Bonick was convicted by a jury of attempting to entice a minor to engage in criminal sexual activity, in violation of 18 U.S.C. § 2422(b), and possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b).  He was sentenced to 240 months for Count One and 120 months for Count Two, to run concurrently.  He now raises an ineffective-assistance-of-counsel claim, and an as-applied Fifth and Sixth Amendment challenge to his sentence.  For the following reasons, we defer review of the ineffectiveness claim and **AFFIRM** Bonick's sentence.

## I.    BACKGROUND

Between July 2010 and July 2011, Christopher Bonick communicated online with "lilmaddygrl"—an undercover law enforcement officer pretending to be a 13-year-old girl. Bonick was 25 when the chats began.  These conversations turned sexual, and Bonick sent and

requested explicit photos, and attempted to talk "lilmaddygrl" into meeting in real life for the purpose of sex. In doing so, he claimed to have previously met and had sex with a 15-year-old girl. The undercover officer on the other end of the chat used the site's archive feature to record all of their communications. After identifying Bonick, law enforcement officers obtained and executed a search warrant of his home, seizing his phone and computers.

During the search, Bonick spoke voluntarily with the officer, and admitted to engaging in sexually explicit online conversations with the undercover officer and with other underage girls, and to keeping pornographic photographs of minors—that he received during these chats, and in "trades" with other men on the internet—on his computer. Bonick told the officer which websites he used and provided his email accounts and passwords. He also admitted that a year and a half earlier, he had sex with a 15-year-old girl he met on the internet. Bonick was interviewed by law enforcement two additional times and continued to answer their questions and provide information.

Officers were able to confirm Bonick's admissions through forensic analysis of his computers and online accounts, finding a total of 77 images of child pornography and records of his sexual chats with minors, including sending and receiving sexually explicit photos and planning to meet in person for sex. In his interviews, Bonick told officers that he was trying his best to be honest with them—in part because he hoped it would help him with his case—and that he wanted to take responsibility for his actions and do the right thing. However, after his second law enforcement interview, Bonick left the state. He was later arrested in Arkansas.

Bonick was indicted on two counts: 1) attempting to entice a minor to engage in criminal sexual activity, in violation of 18 U.S.C. § 2422(b); and 2) possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and 2252A(b). His trial counsel and the Government

attempted to negotiate a plea, but were ultimately unable to come to an agreement, apparently due to the Government's insistence that Bonick admit to facts beyond those alleged in the indictment. At trial, the Government introduced as evidence the chat logs from the undercover officer, pornographic images found on Bonick's computer, evidence of Bonick's internet use and online communications with other minors, and Bonick's own admissions to the officer interviewing him during the execution of the search warrant. Bonick presented no evidence, and the jury returned a guilty verdict on both counts after deliberating for approximately 90 minutes.

In preparing the Presentence Report, the probation officer calculated Bonick's offense level on Count One (attempted enticement of a minor) as 30[1] and his offense level on Count Two (possession of child pornography) as 39.[2] At the sentencing hearing the court largely adopted the guideline calculations in the Presentence Report, with two exceptions. First, at the Government's urging and over Bonick's objection, the court raised the total offense level on Count One from 30 to 41 based on uncharged relevant conduct—specifically that Bonick met and engaged in sex with a minor in Tennessee. Second, the court sustained Bonick's objection to the two-level prepubescent image enhancement, finding that it was too vague. Although the court sustained these objections to the Presentence Report, Bonick's range under the Guidelines remained the same. The Government now points out that the district court appears to have subtracted the two levels from the total offense level on Count One rather than Count Two, ultimately benefiting Bonick. Since no objection was raised to this error at sentencing or by the parties on appeal, we decline to address it.

---

[1] Base offense level 28 plus a two-level enhancement for use of a computer.

[2] Base offense level 18 plus the following enhancements: plus two (images involved prepubescent minor(s)), plus five (distribution without pecuniary gain), plus five (pattern of exploitation or sexual abuse of minor(s)), plus two (use of a computer), plus two (greater than 10, but fewer than 150 images), plus five (pattern of activity involving prohibited sexual conduct with minors).

Bonick had no criminal record, placing him in a criminal history category of I. With a total offense level of 39 and a criminal history category of I, Bonick's Guidelines range was 262 to 327 months in prison. In imposing the sentence, the court considered Bonick's military service, lack of criminal history, and pretrial detention in a county jail the court described as "our worst facility." The court also described the offense conduct as "extremely serious abhorrent conduct." Ultimately, the court granted a small downward variance from what it described as the "Draconian" child pornography guidelines, sentencing Bonick to 240 months in prison on Count One and 120 months on Count Two, to run concurrently, followed by 30 years of supervision. When the court asked if he had any not-previously-raised objections to the sentence, Bonick's counsel responded in the negative. The Government did not object to the slight downward variance.

Bonick now appeals to this court, arguing that his trial counsel provided ineffective assistance and challenging the constitutionality of his sentence.

## II.    ANALYSIS

Bonick presents two issues for appeal:  1) whether trial counsel rendered ineffective assistance by failing to understand Bonick's right to plead guilty to the indictment, without a plea agreement, and as a result, failed to adequately inform Bonick of his options; and 2) whether Bonick's 240-month sentence violates his Fifth and Sixth Amendment rights because it would be struck down as substantively unreasonable but for facts found by the district court by a preponderance of the evidence at sentencing.

### A.    Ineffective-Assistance-of-Counsel Claim

Bonick argues that his trial counsel provided ineffective assistance, thereby violating his Sixth Amendment right to counsel. For this claim, a defendant must show both deficient performance and prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Bonick

argues that his trial counsel "fell below an objective standard of reasonableness" by failing to appreciate and advise Bonick of his plea options, specifically his right to plead guilty to the charges in the indictment without a plea agreement, *Strickland*, 466 U.S. at 688, and that counsel's deficient performance prejudiced him because there is a reasonable probability that Bonick would have pled guilty without a plea agreement if he had been aware of this option, and that his resulting sentence "would have been less severe" than the sentence that was imposed, *Lafler v. Cooper*, 566 U.S. 156, 164 (2012). The Government does not meaningfully dispute the merits of Bonick's argument, but urges this court to decline to reach the ineffective-assistance-of-counsel claim at this time because the record is inadequate to permit review on the merits.

We generally review a claim of ineffective assistance in post-conviction proceedings, rather than on direct appeal, because the record before the court on direct appeal "is usually insufficient to permit an adequate review of such a claim." *United States v. Gardner*, 417 F.3d 541, 545 (6th Cir. 2005). "This rule stems from the fact that a finding of prejudice is a prerequisite to a claim for ineffective assistance of counsel and appellate courts are not equipped to resolve factual issues." *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997) (citation omitted). We have therefore counseled that ineffectiveness claims "are more properly raised in a postconviction proceeding brought pursuant to 28 U.S.C. § 2255." *Gardner*, 417 F.3d at 545; *see also Massaro v. United States*, 538 U.S. 500, 504–05 (2003) (noting that post-conviction proceedings are "preferable to direct appeal for deciding claims of ineffective-assistance" in part because "[t]he evidence introduced at trial . . . will be devoted to issues of guilt or innocence, and the resulting record in many cases will not disclose the facts necessary to decide either prong of the *Strickland* analysis."). We do, however, recognize an exception to this general rule, permitting review "where the record is adequately developed to allow the court to assess the

merits of the claim." *United States v. Watkins*, 509 F.3d 277, 283 (6th Cir. 2007); *see also United States v. Hall*, 200 F.3d 962, 965 (6th Cir. 2000); *United States v. Shabazz*, 263 F.3d 603, 612 (6th Cir. 2001).

We have not recognized a bright line separating sufficiently and insufficiently developed records, and we do not do so today. Determining whether a record is adequately developed requires not simply a review of the record itself, but a review of the record in light of the nature and scope of the ineffectiveness claim. When the claim is narrow, the record is more likely to be sufficient. In *Watkins*, this court agreed with both parties that the record was adequately developed "[b]ased on the narrow focus" of the defendant's claim that trial counsel was ineffective in failing to argue that the district court misapplied a specific provision of the Sentencing Guidelines. 509 F.3d at 283. Similarly, when the record is particularly robust— especially regarding the facts at issue in the ineffectiveness claim—we are more likely to be able to review the claim on the merits. *See, e.g.*, *Hall*, 200 F.3d at 965 ("In this case, the district court addressed the issue of dual representation several times, including at a hearing requested by the prosecutor. Because we are addressing [the defendant's] Sixth Amendment claim based on ineffective assistance resulting from dual representation, the record is complete and allows us to review this issue de novo.").

Of course, the nature of a narrow claim may still be such that it cannot be meaningfully reviewed on the merits without additional factual development, and a record may be insufficiently developed in a given case such that review of even a narrowly drawn claim is not possible. In *Gardner*, this court declined to reach the merits of the defendant's claim that trial counsel had failed to ensure that he understood the nature and consequences of his guilty plea because "the alleged ineffectiveness of [the defendant's] counsel is not apparent. The record

contains no evidence regarding what advice, if any, his counsel provided . . . ." 417 F.3d at 545. *See also United States v. Tucker*, 90 F.3d 1135, 1143 (6th Cir. 1996) ("Even if we assume that [the defendant's] attorney was inadequate, we cannot determine from the evidence in the record whether [the defendant] suffered any prejudice. . . . [W]e cannot decide, based on the current record, whether the result of the sentencing proceeding would have been different if [the defendant's] counsel had raised the issues [the defendant] identifies here.").

Bonick's ineffectiveness claim is limited to one alleged violation: trial counsel's failure to understand that Bonick could have pled guilty to the indictment without a plea agreement and his resulting failure to communicate this option to Bonick. To review this claim for deficient performance—the first of *Strickland*'s two prongs—we must be able to evaluate whether counsel did, in fact, fail to appreciate, or, at a minimum, fail to inform his client of, this option. The record indicates that trial counsel and the Government attempted to negotiate a plea, but ultimately failed to come to an agreement. The Government apparently insisted that Bonick admit to facts outside the scope of the instant charges, which his counsel advised would leave him dangerously exposed to additional charges by the Government or prosecutors in other jurisdictions. Bonick argues that his attorney had therefore concluded that a trial was inevitable because he was unaware of Bonick's third option—pleading guilty to the indictment without an agreement. In support of this assertion, Bonick points to the defense sentencing memorandum, in which trial counsel writes: "When the Government requires a Defendant to 'accept responsibility' for matters beyond the scope of the 'offense' charged then it compels a Defendant to challenge the allegations to restrict the scope of the inquiry by the Government." Bonick also notes counsel's conclusion that "because the Government refused to consider agreeing not to

pursue any further allegations and/or charges against the Defendant any agreement to resolve the matter amicably was not possible and substantive discussions to that end were not an option."

We review these statements in the context presented—counsel's response to the Government's claim that Bonick was uncooperative and failed to accept responsibility—that he "failed to take responsibility for his criminal activity, and [has] shown no remorse." Counsel's statements appear to be an attempt to explain, for sentencing purposes, his client's decision to go to trial. Though they lend some support to Bonick's claim, they do not do so with sufficient clarity to enable us to determine, based solely on the record before us, whether Bonick's attorney did in fact fail to appreciate that his client could plead guilty to the charges in the indictment absent an agreement with the Government.

The Government, moreover, asserts that there is "significant, documented communication between the parties that is not in the record at this time" and that "the parties . . . spent a significant amount of time in plea negotiations that included the option of the defendant receiving the mandatory minimum sentence with no further prosecution in the Middle District of Tennessee." The existence of documented communications of this sort would not necessarily undermine Bonick's claim that trial counsel failed to appreciate his ability to plead without an agreement, but suggests that deferring this determination to post-conviction proceedings would be preferable as it would enable both parties to present additional evidence supporting or disproving counsel's deficient performance and any resulting prejudice.

Furthermore, to evaluate *Strickland*'s prejudice prong, we need to assess whether there is a reasonable likelihood that Bonick would have elected to plead guilty without a plea agreement had he known about this option, and whether there is a reasonable probability that, had he done so, he would have received a "less severe" sentence. *Lafler*, 566 U.S. at 164. Even assuming

there is a reasonable probability that Bonick's sentence would have been less severe had he pled guilty, the record is insufficiently developed to allow us to determine whether Bonick knew about his option to plead without an agreement and whether there is a reasonable probability that he would have pursued it if he had known.

In short, the record does "not disclose the facts necessary to decide either prong of the *Strickland* analysis." *Massaro*, 538 U.S. at 505. We therefore defer review of the ineffectiveness claim to post-conviction proceedings.

**B.      As-Applied Fifth and Sixth Amendment Challenge to Sentence**

Bonick also raises an as-applied constitutional challenge to his sentence, arguing that, because his 240-month sentence would be unreasonable but for facts found by the district court under a preponderance of the evidence standard at sentencing, his Fifth Amendment Due Process and Sixth Amendment jury trial rights have been violated.

1.      Standard of Review

We review preserved constitutional challenges to criminal sentences de novo, *see United States v. Beverly*, 369 F.3d 516, 536 (6th Cir. 2004), however, when the challenge is raised for the first time on appeal, we generally review it under the plain-error standard, *see, e.g.*, *United States v. Yancy*, 725 F.3d 596, 600 (6th Cir. 2013). Upon review of the record, we find that Bonick failed to preserve his as-applied Fifth and Sixth Amendment challenge.[3] We therefore review the claims under the plain-error standard.

To demonstrate plain error, Bonick must show: "(1) error (2) that 'was obvious or clear,' (3) that 'affected defendant's substantial rights' and (4) that 'affected the fairness, integrity, or

---

[3] It is true that Bonick raised objections in his sentencing memorandum and at the sentencing hearing; however, his objections challenge the sufficiency of the evidence proffered by the Government and do not raise challenges to either the preponderance of the evidence standard, or the fact that the findings supporting the enhancements are made by a court instead of a jury.

public reputation of the judicial proceedings.'" *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)). Because any error that Bonick can show is not "obvious or clear" under the law, we need not address the question of whether the court erred in the first place. *See id.* at 387.

### 2. As-Applied Sixth Amendment Claim

Bonick argues that his sentence violates his Sixth Amendment right to trial by jury because it would be struck down as substantively unreasonable but for court-found facts. The Sixth Amendment prohibits the use of judicial fact-finding to increase a defendant's statutory maximum or mandatory minimum sentence. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("[A]ny fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); *Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013) ("Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury."). Judicial fact-finding that increases a mandatory guideline sentence is also unconstitutional. *See United States v. Booker*, 543 U.S. 220, 243–45 (2005); *United States v. White*, 551 F.3d 381, 384 (6th Cir. 2008) (en banc) ("Had the district court in this case relied on acquitted conduct *in determining the range under a mandatory guidelines regime,* that sentence would have violated the Sixth Amendment as interpreted in *Booker*.").

But as our caselaw makes clear, the use of judicial fact-finding in the post-*Booker advisory* guideline sentencing scheme is not prohibited by the Sixth Amendment, assuming the resulting sentence does not exceed the statutory maximum. *White*, 551 F.3d at 384 ("In the post-*Booker* world, the relevant statutory ceiling is no longer the Guidelines range but the maximum penalty authorized by the United States Code."). The fact that the Sixth Amendment does not *prevent* a sentencing court from making factual findings or relying on those findings to impose a

sentence below the statutory maximum does not necessarily dictate that such a practice will *always* result in a constitutional sentence. "[T]here will inevitably be *some* constitutional violations under a system of substantive reasonableness review, because there will be some sentences that will be upheld as reasonable only because of the existence of judge-found facts." *Rita v. United States*, 551 U.S. 338, 374 (2007) (Scalia, J., concurring). The Supreme Court has "not rule[d] out as-applied Sixth Amendment challenges to sentences that would not have been upheld as reasonable on the facts encompassed by the jury verdict or guilty plea," *id.* at 375, so "[t]he door therefore remains open for a defendant to demonstrate that his sentence, whether inside or outside the advisory Guidelines range, would not have been upheld but for the existence of a fact found by the sentencing judge and not by the jury," *Gall v. United States*, 552 U.S. 38, 60 (2007) (Scalia, J., concurring); *see also United States v. Conatser*, 514 F.3d 508, 530–31 (6th Cir. 2008) (Moore, J., concurring).[4]

Despite the language in Justice Scalia's concurrences, neither a majority of the Supreme Court nor a majority of this court has recognized an as-applied Sixth Amendment challenge. Therefore, even if we were to find an error, it could not be said to be "obvious or clear," *Vonner*, 516 F.3d at 386, and Bonick's claim must fail.

### 3.        As-Applied Fifth Amendment Claim

Bonick similarly argues that his sentence violates his Fifth Amendment Due Process rights because it would be substantively unreasonable but for facts determined using a preponderance of the evidence standard and without traditional trial procedures. This court has

---

[4] This court concluded in *White* that "[s]o long as the defendant receives a sentence at or below the statutory ceiling set by the jury's verdict, the district court does not abridge the defendant's right to a jury trial by looking to other facts . . . when selecting a sentence within that statutory range." 551 F.3d at 385. Despite *White*'s strong language, it did not squarely address the as-applied challenge advanced by Bonick. *See White*, 551 F.3d at 386–87 (Merritt, J., dissenting) ("[T]he reasonableness—and thus legality—of [the defendant's] sentence depends entirely on the presence of facts that were found by a judge, not a jury, in contravention of the Sixth Amendment. . . . My colleagues [in the majority] do not discuss any of these issues in their opinion . . . ."). But because any error would not be plain, we need not resolve this issue.

held that judicial fact-finding in sentencing proceedings using a preponderance of the evidence standard does not violate Fifth Amendment Due Process rights, *see United States v. Gates*, 461 F.3d 703, 707–08 (6th Cir. 2006); *United States v. Mayberry*, 540 F.3d 506, 516–17 (6th Cir. 2008), but we have not directly considered the as-applied challenge advanced here.  Much like his Sixth Amendment claim, Bonick's Fifth Amendment challenge fails because, under our caselaw, any error could not possibly be plain.

### III.    CONCLUSION

For the reasons explained above, we defer review of Bonick's ineffective-assistance-of-counsel claim and **AFFIRM** his sentence.