RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0038p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
             *Plaintiff-Appellee*,

v.                                                     No. 11-6241

RODRIGO MACIAS-FARIAS,
                    *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 3:10-cr-35-2—John G. Heyburn II, District Judge.

Decided and Filed: February 8, 2013

Before: DAUGHTREY, KETHLEDGE, and DONALD, Circuit Judges.

———————————

**COUNSEL**

———————————

**ON BRIEF:** Gal Pissetzky, PISSETZKY AND BERLINER, LLC, Chicago, Illinois, for
Appellant. Candace G. Hill, UNITED STATES ATTORNEY'S OFFICE, Louisville,
Kentucky, for Appellee.

———————————

**OPINION**

———————————

MARTHA CRAIG DAUGHTREY, Circuit Judge. Defendant Rodrigo Macias-
Farias was convicted following a jury trial on two counts of drug-trafficking and
sentenced to 320 months of incarceration. He now appeals both his conviction, claiming
error by the district court in denying his motion for a mistrial, and his sentence, claiming
error in the enhancement for obstruction of justice. The motion for a mistrial arose from
the testimony of a prosecution witness that, according to Macias-Farias, revealed both
a *Brady* violation and constituted a violation of the Confrontation Clause. We find no
reversible error in connection with the district court's denial of the defendant's motion

1

for a mistrial, but because of procedural error at the sentencing hearing, we conclude that a remand is required to permit resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

Macias-Farias was charged with conspiring to possess with intent to distribute more than 1,000 kilograms of marijuana and with aiding and abetting possession with the intent to distribute more than 1,000 kilograms of marijuana, in violation of 21 U.S.C. §§ 841 and 846. The charges arose from the Drug Enforcement Agency's interdiction on February 10, 2010, of a truck loaded with approximately 1,600 pounds of marijuana. Stopped near Memphis, Tennessee, the driver told the DEA agents that he was being paid to take a load of what he believed to be produce to an as-yet undetermined location near Louisville, Kentucky. The driver agreed to cooperate with the DEA in making a controlled delivery. He subsequently called his contacts and was directed to park the truck in a large, open area on a sparsely populated street in Shepherdsville, Kentucky. The agents set up surveillance of the truck and observed a blue Toyota minivan registered to Macias-Farias and another car registered to Rafael Lara-Gascon enter and exit the area. Despite the fact that the agents claimed to have maintained visual surveillance of the truck all night, when it was stopped the next day, they discovered that the "cargo of approximately 1,600 pounds of suspected marijuana had been surreptitiously off-loaded from the truck."

The DEA agents confronted Sean Lacefield, whom they had observed with Macias-Farias and Lara-Gascon near the parked truck on February 10, and he agreed to cooperate with the investigation. At the direction of the agents, Lacefield set up a meeting with Macias-Farias at an area restaurant on February 13. Surveilling the meeting, DEA agents saw a woman later identified as Amber Babor join Macias-Farias and Lacefield at the restaurant.

On February 18, Lacefield contacted the DEA and told agents that Macias-Farias and Lara-Gascon were meeting at a Louisville Rite Aid pharmacy to arrange a drug transfer of approximately 100 pounds of marijuana. Lacefield testified at trial that he went to the Rite Aid with Macias-Farias to meet Babor and that Babor got into Macias-

Farias's van with them, leaving her car parked in the Rite Aid parking lot. Lacefield also said that another individual got in Babor's car, drove it away, and then returned with it several minutes later. The DEA was unable to observe the events at the Rite Aid, due to some confusion regarding the location, but agents used information provided by Lacefield to put out an alert on Babor's car. She was apprehended later that day, and officers recovered approximately 100 pounds of marijuana from the trunk of her car.

On February 23, Lacefield alerted the DEA that a large amount of marijuana from Texas was expected to arrive in the Louisville area in the next few days. Early on February 25, DEA agents observed Macias-Farias and Lara-Gascon leave Macias-Farias's residence in a black Tacoma truck. Lacefield had told the DEA that the co-conspirators were planning to meet the arriving truck, and agents confirmed that the Tacoma was being driven in tandem with a red semi-trailer truck. When the semi-trailer truck got stuck in a ditch, Macias-Farias and others drove to a nearby gas station, where they were arrested without incident. Agents searched the truck and discovered approximately 3,766 pounds of marijuana.

At trial, Macias-Farias testified on his own behalf. He identified Lara-Gascon as his brother-in-law and claimed that Lara-Gascon was involved in drug-trafficking, but he denied that he himself was involved in the sale or possession of drugs. He further testified that Lara-Gascon would contact him after the drugs had been unloaded from the trucks to see if Macias-Farias was interested in selling any of the non-drug products that the trucks also transported, such as fruit and vegetables and toys. The jury apparently discredited Macias-Farias's testimony and found him guilty on both counts. The district court sentenced him to 320 months in prison.

**DISCUSSION**

On appeal, Macias-Farias contends that the district court erred when it denied his motion for a mistrial after a government witness made statements that revealed a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and also denied him his right to confrontation. The testimony in question occurred during the cross-examination of DEA Agent Jason Moore. During his direct examination, Moore testified about the

information Lacefield provided regarding the meeting and drug transfer that was to take place at the Louisville Rite Aid on February 18. On cross-examination, defense counsel pressed Agent Moore about the veracity of the information that Lacefield provided regarding the February 18 incident, pointing out that because Lacefield failed to provide the DEA agents with the correct location of the Rite Aid, the agents were unable to witness the drug transfer itself. Defense counsel then asked Moore whether it was true that, as a result, there was no evidence confirming defendant's presence at the transaction "except for Mr. Sean Lacefield's word." Moore answered in the negative, saying that after the transfer of marijuana took place, Lacefield drove Macias-Farias's van to the DEA agents. The cross-examination continued:

> Q. So again, the only information you have regarding that February 18th deal to relate Mr. Macias to it is Sean's words?
>
> A. No, sir.
>
> Q. Okay. And the minivan, you say?
>
> A. No.
>
> Q. More?
>
> A. Yes.
>
> Q. What is more?
>
> A. Amber Babor for one.
>
> Q. Well, Amber Babor is not here, right?
>
> A. You asked who else could provide information about that, and she did.
>
> Q. Oh, she did provide you information on that?
>
> A. Yes.
>
> Q. Okay. Did you write a report about it?
>
> A. Yes, I did.
>
> Q. You did?
>
> A. Yes, I did.

At this point, defense counsel objected, noting that he had not been provided a copy of the DEA report concerning Babor's statements to the DEA. The prosecution responded that they had not asked any questions about Babor during direct examination and that they did not intend to call Babor as a witness. The court nevertheless directed the prosecution to provide Moore's report to defense counsel. Defense counsel then continued cross-examining Moore, using the report.

Later that day, defense counsel requested that Agent Moore's testimony be stricken. In the alternative, he moved for a mistrial, on the grounds that the testimony was "3500 material" and should have been produced in compliance with "*Giglio* and *Brady*."[1] He also reiterated that Babor was not available to be questioned. The government responded that the report had not been offered as evidence but was cited only in response to defense counsel's persistent questioning regarding the veracity of the information Lacefield provided. Defense counsel later renewed his motion for a mistrial, based on his contention that Moore's testimony constituted a violation of the Confrontation Clause. The government insisted that admitting the testimony was not error and argued that, even if it were, the error was invited. The court responded, "I'm not sure it was error, but to the extent it is, it's less than harmless, but I'll advise the jury to ignore the particular answer." As a result, the district court again denied the defense motion for a mistrial but also gave the jury a limiting instruction: "You cannot consider references by witnesses to the alleged statements of Amber Bab[o]r because she did not testify."

We conclude that the district court's denial of a mistrial was appropriate. As for the *Brady* claim, in order to prevail a defendant must show, first, that the evidence is "favorable to the accused, either because it is exculpatory, or because it is impeaching." *United States v. Douglas*, 634 F.3d 852, 860 (6th Cir. 2011) (citing *Strickler v. Greene*,

---

[1] We assume that defense counsel's mention of "3500 material" was a reference to the Jencks Act, 18 U.S.C. § 3500, which directs the government to produce statements or reports made or used by government witnesses at trial. *Brady*, of course, requires the prosecution to turn over material exculpatory evidence to the defense. *See Brady*, 373 U.S. 83 (1963). And, *Giglio* undoubtedly refers to *Giglio v. United States*, 405 U.S. 150 (1972), in which the Supreme Court extended *Brady* to evidence that contains relevant impeachment evidence.

527 U.S. 263, 281-82 (1999)).  In addition, the evidence must have been suppressed by the government.  *Id.*  Finally, the evidence must be "material to the defendant's guilt or punishment."  *Smith v. Cain*,132 S. Ct. 627, 630 (2012).  Evidence is "material" when "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different."  *Id.* (internal quotation marks omitted) (citing *Cone v. Bell*, 556 U.S. 449, 469-70 (2009)).

Those three preconditions have not been established here.  Macias-Farias has not demonstrated that the evidence is either exculpatory or suitable for impeachment purposes and therefore "favorable to the accused."  The relevant portion of Moore's report was Babor's statement to him that Macias-Farias was present during the February 18 drug transfer at the Louisville pharmacy.  Thus, the evidence was, if anything, inculpatory rather than exculpatory.  As for its alleged impeachment value, the record shows that defense counsel had the report in hand when he cross-examined Moore and had read the report by the time he cross-examined Lacefield.  Hence, he had every opportunity to use the report to impeach both witnesses, but did not do so.  It is also clear that the prosecution was not guilty of improper suppression of the report but, instead, considered it irrelevant to the government's case.

Finally, the defendant has not proven that the report is "material." Materiality in this setting requires a showing that "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Smith*, 132 S. Ct. at 630 (internal quotation marks and citation omitted).  A reasonable probability is one that is "sufficient to undermine confidence in the outcome." *United States v. Hanna*, 661 F.3d 271, 296 (6th Cir. 2011) (internal quotation marks and citation omitted).  But Macias-Farias has not established that there is any evidence in the DEA report that would have affected the outcome of the trial in any way, much less undermined confidence in the result.  This conclusion is particularly true in light of all the other evidence presented at trial that supported Macias-Farias's conviction. *See Jells v. Mitchell*, 538 F.3d 478, 502 (6th Cir. 2008) ("When determining whether the withheld

information was material and therefore prejudicial, we consider it in light of the evidence available for trial that supports the petitioner's conviction.").

As for the confrontation claim, we likewise find no reversible error in connection with the district court's denial of the defense motion for a mistrial. The Confrontation Clause bars the admission of testimonial hearsay absent an opportunity for the accused to cross-examine the extrajudicial declarant. *See United States v. Boyd*, 640 F.3d 657, 665 (6th Cir.), *cert. denied*, 132 S. Ct. 271 (2011). But, in this case, Agent Moore testified only that he had obtained information from Amber Babor. He did not repeat the information itself, which might well have amounted to hearsay testimony *if* it had been offered to establish the truth of the statement by the declarant, Babor. *See* Fed. R. Evid. 801(c); *see also United States v. Childs*, 539 F.3d 552, 559 (6th Cir. 2008) (defining hearsay as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"). Although the jury could have inferred that Babor's information corroborated Lacefield's account of the events of February 18, it is unclear from the record what portion of Lacefield's information she corroborated, much less what she actually told Moore. As we have noted, "[t]he hearsay rule does not apply to statements offered merely to show that they were made or had some effect on the hearer." *United States v. Martin*, 897 F.2d 1368, 1371 (6th Cir. 1990) (citing *United States v. Gibson*, 675 F.2d 825, 833-34 (6th Cir. 1982)).

Macias-Farias also claims on appeal that the district court failed to make necessary findings before imposing a two-level sentencing enhancement for obstruction of justice. Section 3C1.1 of the Sentencing Guidelines authorizes such an enhancement in cases in which a "defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and . . . the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense." U.S.S.G. § 3C1.1. The commentary specifies that "committing,

suborning, or attempting to suborn perjury" is an example of the type of conduct to which this adjustment applies. U.S.S.G. § 3C1.1 cmt. n.4(B).

Over the defendant's objection, the presentence report prepared by the probation department recommended an obstruction enhancement on the ground that "the defendant gave false testimony at trial." At the sentencing hearing, the district court asked the government to "refresh [its] memory" as to Macias-Farias's testimony, which the government then summarized as follows: "That he had nothing to do with the marijuana, that he was there to steal the cover load from these trailers, and that he did not have any role in organizing, receiving, offloading." In response, the district court made several observations. First, the judge acknowledged that, in order to warrant the sentencing enhancement, "the obstruction can't be intrinsic to the crime itself." Second, the district judge noted that the enhancement was not meant to "penalize people unduly for testifying, you know, their right to testify or their right not to testify." He concluded, however, that this case was not one in which the imposition of the enhancement would penalize actions that were intrinsic to the crime, nor would it penalize the defendant simply for testifying. Instead, the judge determined, because Macias-Farias perjured himself, presenting the jury with "an obvious lie, a big lie . . . one that's completely unbelievable," an obstruction-of-justice enhancement was appropriate.

Interpreting and applying the Supreme Court's directives in *United States v. Dunnigan*, 507 U.S. 87 (1993), we have held that a district court must complete two tasks when applying the § 3C1.1 enhancement in cases involving perjured testimony by the defendant. First, "[the district court] must identify those particular portions of the defendant's testimony that it considers to be perjurious, and second, it must either make specific findings for each element of perjury or at least make a finding that encompasses all of the factual predicates for a finding of perjury." *United States v. Bazazpour*, 690 F.3d 796, 808 (6th Cir. 2012) (citation and internal quotation marks omitted). In turn, the offense of perjury requires the establishment of three elements: that the defendant made "(1) a false statement under oath (2) concerning a material matter

(3) with the willful intent to provide false testimony." *United States v. Watkins*, 691 F.3d 841, 851 (6th Cir. 2012) (citing *Dunnigan*, 507 U.S. at 94).

Here, the district court obviously concluded that the defendant had perjured himself at trial, although the court did not identify any specific portion of Macias-Farias's testimony that it found to constitute perjury. The government argues that its summary of Macias-Farias's false testimony, provided in response to the district judge's invitation to "refresh [his] memory," is a sufficient basis for enhancement because, in response to the prosecutor's recitation, the judge agreed on the record that the defendant had "[told] a big lie." As the government notes, we have held that in imposing an obstruction enhancement, courts may rely upon lists of a defendant's perjurious statements provided by the government. *United States v. Sassanelli*, 118 F.3d 495, 501 (6th Cir. 1997). However, a court may do so only so long as it makes clear that it has independently adopted the prosecution's recital. *Id.* In this case, the government did not submit a detailed sentencing memorandum listing the alleged perjuries. Indeed, the government did not even mention the obstruction-of-justice enhancement in its sentencing memorandum. Hence, the court's reliance on the government's off-the-cuff summary of Macias-Farias's testimony cannot support the enhancement, especially because the court did not indicate it was so relying.

The government next contends, quoting *Sassanelli*, 118 F.3d at 501, that district courts are not required to identify specific portions of the testimony if the testimony was "pervasively perjurious." It argues that a listing of specific falsehoods was therefore not required in this case. But, even if we were to interpret the district court's assertion that Macias-Farias's testimony represented "an obvious lie, a big lie" to mean that his testimony was "pervasively perjurious," the court's imposition of the sentencing enhancement would nevertheless fail *Dunnigan*'s second requirement, because the court did not make specific findings for each element of perjury or findings that encompassed the factual predicates necessary to establish perjury.

The government contends that, because there is no dispute that Macias-Farias's testimony was under oath, the first element of perjury can be presumed. It also argues

that Macias-Farias put his *mens rea* at issue when he testified that he had no intention of participating in the offloading of the marijuana. Because *mens rea* is a "critical element of both the charges of which he was convicted," the government's argument continues, the materiality of the defendant's testimony can be presumed as well. Although these arguments are superficially appealing, we find that they fail to take seriously the *Dunnigan* requirement that the district court make specific factual findings that either directly relate to, or encompass, the elements of perjury and not merely presume them to be satisfied. Indeed, in cases involving almost identical factual circumstances, we have overturned the sentencing enhancement for failing to fulfill the second part of the *Dunnigan* procedure. *See*, *e.g.*, *United States v. Lawrence*, 308 F.3d 623, 633 (6th Cir. 2002) (vacating an obstruction-of-justice enhancement when the sentencing court stated that "it did not believe [defendant's] testimony . . . nor did the jury" but "made no indication which portions of defendant's testimony were perjurious" and did not "apply any of the elements of perjury to the testimony"); *United States v. McRae*, 156 F.3d 708, 713 (6th Cir. 1998) (rejecting enhancement when district court did not "specify[] the areas of conflicting testimony or mak[e] independent findings with respect to either the elements or the factual predicates necessary for a finding of perjury"); *Sassanelli*, 118 F.3d at 500, 502 (vacating an obstruction-of-justice enhancement because the district court concluded that "almost everything that [the defendant] said was contrary to what the [c]ourt believes were the facts in this particular matter" but "did not identify any examples of such perjury, and . . . did not attempt to apply the elements of perjury to such examples").

We have recently reemphasized that an appellate court is not well-placed to make factual findings of perjury in the first instance, even if we believe there is evidence in the record that supports such findings. *See Bazazpour*, 690 F.3d at 807-08 (noting that the trial record reflected "myriad perjurious statements" made by defendant but that, even if district court had identified them specifically, remand was still appropriate to allow district court to make necessary findings on whether defendant gave "false testimony *concerning a material matter* with the willful intent to provide false testimony" (emphasis in original) (citation omitted)). Based on controlling precedent,

we have no choice but to remand the case to the district court with instructions  to "identify with particularity the statements made by [Macias-Farias] at trial that it considers to be perjurious, and to make a specific finding that each such statement upon which it relies satisfies each of the elements of perjury." *Sassanelli*, 118 F.3d at 502.

## CONCLUSION

For the reasons set out above, we AFFIRM the defendant's conviction but REMAND  the case for resentencing, based on the district court's failure to make the specific findings necessary to enhance Macias-Farias's sentence for obstruction of justice.