NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0447n.06

No. 16-3072

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 03, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | NORTHERN DISTRICT OF OHIO |
| NIKITA GRIFFIN, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

**BEFORE: WHITE and STRANCH, Circuit Judges; and MICHELSON, District Judge.**[*]

**MICHELSON, District Judge**. Nikita Griffin pleaded guilty to conspiring to submit false income tax returns in violation of 18 U.S.C. § 286. The district court sentenced him to 12 months' imprisonment. In calculating Griffin's total offense level, the district court determined that Griffin was not entitled to a two-level reduction for acceptance of responsibility and imposed a two-level enhancement for obstructing justice. Griffin challenges both determinations. Because the district court made insufficient factual findings to support its determinations, we REVERSE and REMAND for further proceedings.

**I.**

On February 3, 2015, a federal grand jury indicted Nikita Griffin and co-Defendant Sean Houston for conspiring to submit fraudulent income tax returns to the United States in violation

---

[*] The Honorable Laurie J. Michelson, United States District Judge for the Eastern District of Michigan, sitting by designation.

of 18 U.S.C. § 286. The indictment described a scheme in which Houston prepared fraudulent tax returns to obtain "refund anticipation" loan checks from a bank, which Griffin then cashed.

On April 14, 2015, Griffin pleaded guilty pursuant to a written plea agreement that described his role in the conspiracy as mostly limited to cashing five refund-anticipation checks. According to the agreement's factual summary, Houston prepared 2009 income tax returns for six taxpayers based on false information and then mailed to Atlanta "a package of tax refund anticipation checks" (five in total), which Griffin "obtained." Griffin then deposited three of the five checks (totaling $12,081) into his personal bank account in February 2010. He sent the taxpayers named on the other two checks to a check-cashing business in Georgia, splitting the proceeds with the taxpayers after they cashed the checks. The plea agreement further stated that another individual, William Walton, gave his "identifying information" to Griffin, but the IRS rejected Walton's return as fraudulent after Houston filed it.

Griffin agreed that the plea agreement's factual summary "fairly and accurately sets forth Defendant's offense conduct and a factual basis for the guilty plea." Additionally, the government "agree[d] to recommend a two (2) level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), provided Defendant's conduct continues to reflect Defendant's acceptance of responsibility."

At Griffin's change of plea hearing, the government described Griffin's conduct similarly to the plea agreement: Griffin obtained five checks from Houston, deposited three of them into his bank account, and met the taxpayers named on the other two checks at a check-cashing business, splitting the proceeds after they cashed the checks. The government also stated, "Houston says that the information came from an accountant in Atlanta, Georgia." When the district court asked whether the government's description was true, Griffin said that it was.

Griffin also represented that the statements made in the plea agreement's factual summary were true.

On July 28, 2015, the Probation Department prepared a revised presentence investigation report (PSR) that described Griffin's role in the conspiracy in terms that echoed the plea agreement. Griffin also submitted this statement to probation: "I fully admit my involvement in this case. I had an opportunity to make some money by cashing fraudulent checks. I would sometimes have others cash the checks. I also gave other people's personal information to another to make the checks. I am truly sorry for my behavior. It will never happen again." The PSR recommended a two-level reduction from Griffin's total offense level under the sentencing guidelines because Griffin "has clearly demonstrated acceptance of responsibility for the offense." The PSR also stated that "[t]he probation officer has no information indicating the defendant impeded or obstructed justice."

But before the district court sentenced Griffin in January 2016, the government took a different view of Griffin's conduct. The government filed a sentencing memorandum asking the district court to not only deny Griffin a two-level reduction for acceptance of responsibility under United States Sentencing Guidelines § 3E1.1(a), but to go further and impose a two-level increase for obstruction of justice under § 3C1.1. The government stated that it had come to learn that Griffin "lied not only during the investigation, but in his pretrial interview with U.S. Probation, in a pre-plea proffer interview, and in the factual basis section of his plea agreement." More specifically, the government asserted that while Griffin represented that his involvement was limited to cashing the checks, he was actually the source of the taxpayer information that Houston used to generate the false returns.

The government's sentencing memorandum pointed to several sources to support this theory. Houston stated in interviews and proffers that he received a package with the taxpayers' information from a Lerona Baker. In a hearing on Houston's motion to dismiss the indictment, a witness named Donqualla Hale testified that she—along with Patricia Alexander (Baker's Aunt)—delivered a package containing taxpayer information from Baker to Houston. Alexander said the same in an April 22, 2015 interview. In a recorded phone call, Baker also admitted sending the tax-return information to Houston and said that she had received it from "Keys." And in a post-arrest interview, Baker stated that "Keys" was Griffin. At Griffin's sentencing hearing, the government further stated that the previous day Baker had produced a fax attaching the Social Security cards and drivers' licenses used for the tax returns—a fax sent by a "Mrs. Griffin," whom Baker believed to be Griffin's mother.

Based on the evidence that Griffin not only cashed checks but also supplied the taxpayers' information to Houston, the government's sentencing memorandum contended that Griffin had lied to the government, the district court, and probation about his role in the conspiracy. For instance, according to the government, in a May 2012 interview, Griffin said that "he never sent anyone's personal information (SSN, DOB, address) or anything to anyone." Griffin also allegedly denied knowing where the checks he negotiated originated and "provided no information about Baker's role in getting the returns filed or about his own dealings with Baker." Further, the government claimed that in an April 9, 2015 telephone interview before his plea, Griffin said he obtained the checks he negotiated from "a guy named 'Man,'" but he said nothing about getting the taxpayer information and sending it to Baker. As an aside, the government also noted that Baker said that Griffin called her after his guilty plea—but before her indictment—telling her she would be arrested.

At the sentencing hearing, the government objected to paragraphs 21 and 24 in the PSR, paragraphs that reflected the probation department's recommendation for a two-level reduction for acceptance of responsibility and no adjustment for obstruction of justice. After hearing argument, the district court sustained the government's objections, stating:

> I think that the case was set out in the presentence report, and the statements made to Probation all suggested [Griffin's] conduct had been limited to cashing the checks. And it appears that the evidence now supports a finding that he had been crucially involved in supplying the Social Security Numbers or the employer identification numbers that were kind of at the core of the conspiracy.

The district court then found "that the defendant should receive a two-level increase for obstruction of justice" and that "the defendant has not accepted responsibility under the general rule that conduct that occurs after a plea negates the acceptance of responsibility." Based in part on those adjustments to Griffin's total offense level, the district court calculated that his guidelines range was 10 to 16 months' imprisonment. Without those adjustments, Griffin's guidelines range would have been zero to six months. The district court imposed a sentence of 12 months. This appeal followed.

## II.

### A.

Griffin argues that the district court erred by increasing his total offense level for obstruction of justice without specific factual findings. We agree.

"We review the district court's findings of fact for clear error, but determine de novo 'whether specific facts actually constitute an obstruction of justice.'" *United States v. Kamper*, 748 F.3d 728, 744 (6th Cir. 2014) (quoting *United States v. Bazazpour*, 690 F.3d 796, 805 (6th Cir. 2012)).

"Under § 3C1.1, a district court must increase a defendant's offense level by two points if the defendant 'willfully obstructed or impeded, or attempted to obstruct or impede, the

administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction.'" *United States v. Williams*, 709 F.3d 1183, 1185 (6th Cir. 2013) (quoting U.S.S.G. § 3C1.1). The application notes give examples of covered conduct, three of which the government urged applied to Griffin: "providing materially false information to a judge or magistrate judge," U.S.S.G. § 3C1.1 cmt. 4(F), "providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense," *id.* cmt. 4(G), and "providing materially false information to a probation officer in respect to a presentence or other investigation for the court," *id.* cmt. 4(H).

The record is unclear as to which, if any, of these types of conduct the district court found applicable. After hearing argument from the parties and indicating that it had reviewed the government's sentencing memorandum, the district court concluded, "I think that the case was set out in the presentence report, and the statements made to Probation all suggested your client's conduct had been limited to cashing the checks," but "it appears that the evidence now supports a finding that he had been crucially involved in supplying the Social Security Numbers or the employer identification numbers that were kind of at the core of the conspiracy." The district court then found that Griffin "should receive a two-level increase for obstruction of justice." At a later point in the hearing, the district court also remarked, "It appears that your conduct was associated—was more central to this than I originally understood. It appeared that you were one of the sources of the identification numbers."

The question here is whether the district court made factual findings sufficient to impose the obstruction-of-justice enhancement. "When . . . the defendant has properly objected to an obstruction of justice increase, the trial court should make specific factual findings which evince the defendant's willful impediment of justice." *United States v. Lineberry*, 7 F. App'x 520, 524

(6th Cir. 2001) (per curiam) (citation omitted); *see also United States v. Range*, 982 F.2d 196, 198 (6th Cir. 1992) ("The record now before us is simply too cryptic to enable us to say with the requisite degree of certainty that the decision to enhance the sentences of the defendants for obstruction of justice is free of error."). This principle comports with Federal Rule of Criminal Procedure 32(i)(3)(B), which provides that at sentencing, the court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." "[W]e require literal compliance with this Rule for a variety of reasons, such as enhancing the accuracy of the sentence and the clarity of the record." *United States v. White*, 492 F.3d 380, 415 (6th Cir. 2007) (internal quotation marks and citations omitted); *see also United States v. Middleton*, 246 F.3d 825, 847 (6th Cir. 2001) (vacating sentence and remanding "because the district court made no factual findings in support of its conclusion that an [obstruction-of-justice] enhancement was appropriate"). Thus, contrary to the government's suggestion, a district court "implicitly adopt[ing] the United States' reasoning as part of its findings" does not suffice.

The district court's findings here do not satisfy these standards. The three U.S.S.G. § 3C1.1 application notes cited by the government illustrate why.

For one, the district court made no specific finding that Griffin "provid[ed] materially false information to a judge or magistrate judge." *See* U.S.S.G. § 3C1.1 cmt. 4(F). Nor is it apparent from the record that Griffin engaged in such conduct. Assuming that Griffin was the original source of the taxpayer information Houston obtained, the record does not establish that Griffin falsely denied that to the district court. Granted, at his plea hearing, Griffin confirmed the accuracy of the agreement's factual basis, and that factual basis limited his role to cashing

five checks and supplying information for one taxpayer. But when it comes to the obstruction-of-justice enhancement, there is a difference between providing "incomplete information" and a materially false statement. *See United States v. Sanders*, 162 F.3d 396, 403 (6th Cir. 1998) (affirming obstruction-of-justice enhancement where district court found that the defendant lied about whether he was present at a burglary because "[t]his was not a situation, as Defendant asserts, where he provided, at most, incomplete information"). Moreover, Griffin's plea agreement expressly contemplated that his stated level of involvement may not have included complete information: "Defendant acknowledges that the above summary of Defendant's conduct does not set forth each and every fact that the USAO could prove at trial, nor does it encompass all of the acts which Defendant committed in furtherance of the offense(s) to which Defendant is pleading guilty."

Similar issues lurk with § 3C1.1's application note (4)(G), which covers "providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense." Assuming the government is correct that Griffin supplied taxpayers' information to Houston, the record would support a finding that Griffin provided a false statement to law enforcement. Specifically, according to the government, Griffin stated in a May 2012 interview that "he never sent anyone's personal information (SSN, DOB, address) or anything to anyone." The government also maintains that in an April 2015 pre-plea proffer, Griffin "described his role as acting as a legitimate check-cashing business, and said nothing about gathering the taxpayer information and sending it to Baker." But the district court made no finding that these statements were "materially false." Nor did the district court find that the statements "impeded the official investigation or prosecution" of this case. This is important, because § 3C1.1's application note 5(B) states that "making false

statements, not under oath, to law enforcement officers" is ordinarily not covered as obstruction of justice, "unless Application Note 4(G) above applies." Thus, as we have observed, "[T]he interplay between Application Notes 4(g) [sic] and 5(b) [sic] leads to a conclusion that . . . lies to investigators, standing alone, would not ordinarily warrant an obstruction enhancement unless those lies 'significantly obstructed or impeded' the government's investigation." *United States v. Carter*, 510 F.3d 593, 598 (6th Cir. 2007).

The final application note that the government cited in its sentencing memorandum, § 3C1.1 cmt. 4(H), covers "providing materially false information to a probation officer in respect to a presentence or other investigation for the court." The government contended in its sentencing memorandum that Griffin's statement to probation "confined his responsibility to cashing some checks" and now argues that his statement "described his role . . . as that of a check-cashing conduit." But the only evidence of Griffin's statement to probation suggests otherwise. According to the PSR, in addition to admitting cashing the checks, Griffin specifically admitted that he "also gave other people's personal information to another to make the checks." If the government is right that Griffin was Houston's main source, Griffin's statement to probation neither expressly confirms nor denies that claim. *See* U.S.S.G. § 3C1.1 cmt. 5(C) (cautioning that adjustment for obstruction of justice ordinarily does not apply to "providing incomplete or misleading information, not amounting to a material falsehood, in respect to a presentence investigation").

In short, the district court should have made more specific factual findings to support its determination that the obstruction-of-justice adjustment is warranted. Without those findings, we are hard pressed to conclude that the district court's determination was not erroneous. Accordingly, we remand to the district court for resentencing to more fully develop its findings.

**B.**

Griffin also argues that the district court erred by denying him a reduction to his offense level for acceptance of responsibility. We agree with this too.

We review for clear error the district court's determination that Griffin is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1. *See United States v. Coss*, 677 F.3d 278, 290 (6th Cir. 2012). "A finding is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Gilpatrick*, 548 F.3d 479, 484 (6th Cir. 2008) (citation omitted). The district court's determination is "entitled to great deference on review." *United States v. Genschow*, 645 F.3d 803, 813 (6th Cir. 2011); *see also* U.S.S.G. § 3E1.1 cmt. 5.

The sentencing guidelines provide for a two-level decrease to a defendant's offense level if, by a preponderance of the evidence, the defendant demonstrates acceptance of responsibility for his offense. *See* U.S.S.G. § 3E1.1(a); *United States v. Bacon*, 617 F.3d 452, 458 (6th Cir. 2010). The application notes to § 3E1.1 explain that while "a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction[,] . . . a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." U.S.S.G. § 3E1.1 cmt. 1(A).

The government's principal argument is that the district court appropriately withheld the reduction for acceptance of responsibility because Griffin minimized his role in the conspiracy—to the court, investigators, and the probation department. We have indeed recognized that a district court may withhold a reduction for acceptance of responsibility when a defendant has minimized his conduct. *See United States v. Lay*, 583 F.3d 436, 449 (6th Cir. 2009)

("[A]dmitting the elements of criminal conduct while constantly attempt[ing] to mischaracterize that conduct, 'spin' it, so to speak, and minimize [the defendant's] responsibility will support a finding that a defendant has not accepted responsibility." (internal quotation marks and citation omitted; second and third alterations in original)); *see also United States v. Reeves*, 100 F. App'x 470, 471–72 (6th Cir. 2004) ("A defendant's attempt to minimize his own role in the offense is inconsistent with acceptance of responsibility").

It seems clear that the district court concluded that Griffin minimized his conduct to the probation department:

> Okay. I'm going to sustain the government's objection. I think that the case was set out in the [PSR], and the statements made to Probation all suggested your client's conduct had been limited to cashing the checks. And it appears that the evidence now supports a finding that he had been crucially involved in supplying the Social Security Numbers or the employer identification numbers that were kind of at the core of the conspiracy.

> So I'll sustain the government's objection.

But the district court also stated, "I find the defendant has not accepted responsibility under the general rule that conduct occurring after a plea, obstructing conduct that occurs after a plea negates the acceptance of responsibility." The specific reference to conduct "occurring after [the] plea" as "obstructing conduct" clouds the basis for the determination that Griffin was not entitled to a reduction for acceptance of responsibility because the record has limited references to any post-plea conduct. True, probation interviewed Griffin by phone post-plea, on June 10, 2015, in the presence of defense counsel. Yet Griffin provided only background information at that time, specifically, personal and family data, and information regarding his physical condition, mental and emotional health, substance abuse, educational, vocational and special skills, employment record, and financial condition. As discussed, the district court made no specific finding that any of Griffin's statements to probation—including his statements about his

role in the conspiracy—were "materially false." Griffin also called Baker after his plea, warning her that she would be arrested. But the district court made no reference to this nor specifically found that the call was obstructive.

Accordingly, because the record is ambiguous as to why the district court denied an adjustment for acceptance of responsibility, we direct the court to reevaluate this issue as well. *See United States v. Cook*, 178 F.3d 1296 (6th Cir. 1999) (unpublished disposition) (remanding for re-sentencing because "the record is ambiguous as to why the district court denied the acceptance of responsibility reduction" even though the record had sufficient evidence to support such a finding).

## III.

For the reasons stated, we VACATE Griffin's sentence and REMAND the case for resentencing.