RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0054p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 17-6512

JOHN ROBERTS,

*Defendant-Appellant.*

───────────────

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:16-cr-00199-1—Roger H. Lawson, Jr., District Judge.

Argued:  December 6, 2018

Decided and Filed:  March 28, 2019

Before:  MOORE, GIBBONS, and COOK, Circuit Judges.

───────────────

#### COUNSEL

───────────────

**ARGUED:**  David L. Cooper, THE LAW OFFICE OF DAVID L. COOPER, PC, Nashville,
Tennessee, for Appellant.  Thomas J. Jaworski, UNITED STATES ATTORNEY'S OFFICE,
Nashville, Tennessee, for Appellee.  **ON BRIEF:**  David L. Cooper, THE LAW OFFICE OF
DAVID L. COOPER, PC, Nashville, Tennessee, for Appellant.  Thomas J. Jaworski, UNITED
STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee.

───────────────

#### OPINION

───────────────

COOK, Circuit Judge.  John Roberts challenges several of the district court's decisions at
trial and sentencing: an evidentiary ruling, the district court's refusal to authorize Criminal
Justice Act (CJA) funds for a forensic accountant, its reliance on judge-found facts to calculate

the appropriate Guidelines range, the application of six sentencing enhancements, and the substantive reasonableness of his sentence. We affirm in part and remand some issues for further proceedings.

**I.**

The facts of this case are not complicated. John Roberts and seven coconspirators worked together to steal millions of dollars' worth of sensitive military equipment from a local army base and sell it on eBay. Although Roberts took the stand and denied that he knowingly trafficked stolen goods, the jury convicted him on all thirteen counts in the indictment: one count of conspiracy to steal government property valued at over $1,000 (18 U.S.C. § 371); ten counts of wire fraud (18 U.S.C. § 1343); and two counts of unauthorized export of prohibited military equipment (22 U.S.C. § 2778(b)(2)). The district court applied six enhancements to Roberts's sentence: eighteen offense levels for stealing more than $3.5 million of military equipment under USSG § 2B1.1(b)(1)(J), two levels for mass-marketing under USSG § 2B1.1(b)(2)(A)(ii), two levels as a "person in the business of receiving and selling stolen property" under USSG § 2B1.1(b)(4), two levels for committing a crime involving sophisticated means under USSG § 2B1.1(b)(10)(C), four levels for organizing or otherwise leading the criminal conspiracy under USSG § 3B1.1(a), and two levels for willfully obstructing justice under USSG § 3C1.1. Ultimately, the court sentenced Roberts to 180 months' imprisonment, varying downward from the 210- to 262-month range suggested by the Guidelines.

Roberts appeals, contesting several of the district court's decisions at trial and sentencing.

**II.**

**A. Evidentiary ruling**

Before trial, Roberts notified the government that he intended to introduce into evidence other, current eBay listings by different sellers to prove that he accidentally—rather than knowingly—committed a crime. These listings offered similar types of sensitive military equipment as those in the indictment: combat helmets, night vision goggles, body armor vests, and communication headsets. Roberts expected to tell the jury that he saw posts on eBay before

he began selling on the internet, presumed that these military products freely circulated in the market, and concluded that he could have lawfully bought and sold them. He ended up selling stolen goods, he would have argued, but that doesn't mean that he did so knowingly. After reviewing the parties' motions in limine and discussing the issue during two bench conferences, the district court excluded the evidence.

Roberts argues that the district court abused its discretion in excluding evidence that would have critically undercut the government's case. The government, on the other hand, contends that it did not ask the jury to infer mens rea from the nature of the equipment Roberts sold on eBay. Instead, the government called three of Roberts's coconspirators to testify that he knew that he sold stolen goods. And it introduced several text messages between the coconspirators further substantiating that testimony. Thus, the government argues, the eBay listings had limited probative value, if any, and could have confused the jury into reasoning that Roberts ought not be convicted for a crime that others freely continue to commit. The government has the better of the argument.

An appellate court must be mindful of its limitations when reviewing evidentiary determinations. Unlike a district court, we rely on a record devoid of a trial's "nuances, dynamics, and atmosphere." *United States v. Chambers*, 441 F.3d 438, 456 (6th Cir. 2006). Thus, we review a district court's evidentiary rulings for abuse of discretion, deferring to the court's decision to admit or exclude evidence "unless we are left with the definite and firm conviction" that it clearly erred in weighing the relevant factors. *United States v. Wagner*, 382 F.3d 598, 616 (6th Cir. 2004); *see also United States v. Weaver*, 610 F. App'x 539, 543 (6th Cir. 2015).

Although the Federal Rules of Evidence favor admission, a trial court may exclude relevant evidence if the danger of unfair prejudice resulting from admitting it substantially outweighs its probative value. Fed. R. Evid. 403. We reject the trial court's balancing only when we are firmly convinced that the district court erred, and, even then, only if that error resulted in substantial injustice. *United States v. Dixon*, 413 F.3d 540, 544 (6th Cir. 2005); *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 832 (6th Cir. 2000).

Viewing the evidence in the light most favorable to Roberts by maximizing its probative value and minimizing its prejudicial effect, as we must, *United States v. Brady*, 595 F.2d 359, 361 (6th Cir. 1979), we are not convinced that the district court abused its discretion. Even taken generously, the eBay evidence does little more than demonstrate that many users illicitly sell stolen goods over the internet. These listings not only postdate the indictment, but they also do not rebut the bevy of other evidence the government offered to prove that Roberts knew the goods were stolen—such as text messages discussing the conspiracy and other witness testimony. The evidence more likely would have confused the issues and convinced the jury to acquit "on [the] improper basis" that other users illicitly sell stolen goods with impunity. *See United States v. Rey*, 923 F.2d 1217, 1222 (6th Cir. 1991).

Moreover, even if we did conclude that the district court erred, any such error is harmless. The government offered abundant evidence that Roberts knew he trafficked stolen goods. Thus, excluding the eBay listings would not have had a "substantial and injurious effect or influence" on the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

## B. Violating CJA by denying funding for a forensic accountant

Under the CJA, attorneys for indigent defendants can petition a court for federal funds to retain an investigator, expert witness, or professional whose services the attorney needs to provide adequate representation. 18 U.S.C. § 3006A(e)(1). To obtain these funds, an indigent defendant must show that "(1) such services are necessary to mount a plausible defense, and (2) without such authorization, the defendant's case would be prejudiced." *United States v. Gilmore*, 282 F.3d 398, 406 (6th Cir. 2002).

Roberts argues that he did both. Before sentencing, he asked the court for $2,500 in CJA funds to cover the costs of a forensic accountant. He justified the expenditure by explaining that the presentence report did not explain the government's valuation method in calculating loss, and that "many of the items and pieces of equipment were 'used' so that full retail value may not be appropriate. Depreciation of the value of the property may or may not have been taken into account by the government when considering the amount of loss." R. 230, PageID 873–74. And the value of the stolen items directly enhanced his sentence. In a text-only order, the visiting

judge from the Middle District of Georgia denied the motion. R. 232. Roberts appeals this decision, arguing that the district court abused its discretion.

When a district court gives no explanation of its reasoning in denying such a motion, we find ourselves at a loss. Reviewing for abuse of discretion does not mean that we substitute our judgment for the trial court's, affirming if we come to the same conclusions after reviewing the record. *United States v. Mathis-Gardner*, 783 F.3d 1286, 1288–89 (D.C. Cir. 2015). On the other hand, we don't require a district court to labor over detailed explanations for every ruling; sometimes, clear and compelling reasons warrant promptly denying relief. *Id.* at 1289. "[W]hen the reasons for denying a colorable motion are apparent on the record, or when granting relief was clearly appropriate from the face of the record, we can properly review whether the district court appropriately exercised its discretion, even without an explanation." *Id.* (internal quotations and citations omitted).

At the time the district judge denied Roberts CJA funds, no clear and compelling reason supported that conclusion. But we need not remand for the district court to explain why it denied the motion because sentencing made clear that a forensic accountant could not have helped Roberts's sentencing position.

During oral argument, counsel clarified that two sources of inventory drove the sentencing enhancement: the $4.1 million of items Roberts sold on eBay, and the $1.4 million of items seized in his warehouse. The value of the eBay items had been determined by the market prices they sold for—the only question for the judge was how many items had been stolen and illegally sold outside military channels. In contrast to the eBay inventory, the items seized at the warehouse had not yet been sold. The military valued those items at $1.4 million, but Roberts theorized that with a forensic accountant he could properly challenge that figure.

But challenging it would not have affected Roberts's sentence. The government's witness testified that between ninety and ninety-five percent (over the threshold $3.5 million[1]) of

---

[1]This may not be readily apparent from the sentencing transcript because the district court erroneously twice reduced the value of the eBay items to account for stolen goods. The government's witness testified that Roberts earned $4.1 million in eBay sales and testified that ninety to ninety-five percent of those items were stolen. The district court acknowledged that the eBay portion of the loss would amount to around $3.6 million (using the

the items sold on eBay had been stolen. And that number alone drove the loss-value sentencing enhancement. Thus, even if we decided that the district court erred here, its error was harmless. *See United States v. Clark*, 385 F.3d 609, 618 (6th Cir. 2004) (employing the harmless error rule where district judge denied a defendant CJA funds).

### C. Violating Sixth Amendment by denying funding for a forensic accountant

Roberts also claims that by denying him funding for a forensic accountant, the district court denied him effective assistance of counsel, violating his Sixth Amendment rights. But Roberts contends only that the district court denied his counsel the opportunity to challenge the loss valuation at sentencing, not that his counsel ineffectively represented him. *See United States v. Thurmon*, 413 F.3d 752, 755 (8th Cir. 2005); *see also United States v. Osoba*, 213 F.3d 913, 917 (6th Cir. 2000). This allegation is therefore more appropriately construed as an argument that the district court violated the CJA, *see Thurmon*, 413 F.3d at 755, and we have already found that contention meritless.

### D. Relying on judge-found loss valuation to calculate the sentencing range

The district court questioned government witness Agent Perry at sentencing on the value of Roberts's theft to calculate the appropriate guideline range. Roberts did not object to the district court taking on this role. We thus review the judge's fact-finding at sentencing for plain error, reversing only if we find "(1) error (2) that 'was obvious or clear,' (3) that 'affected defendant's substantial rights' and (4) that 'affected the fairness, integrity, or public reputation of the judicial proceedings.'" *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)).

The Sixth Amendment includes no prohibition on district courts making factual findings or relying on those findings to impose a sentence below the statutory maximum. *United States v. Bonick*, 711 F. App'x 292, 299 (6th Cir. 2017). Although we concluded in *Bonick* that these practices will not "*always* result in a constitutional sentence," neither a majority of the Supreme

---

lower end of the witness's estimate, ninety percent). It later mistakenly commented that the eBay portion of the loss amounted to "90 percent of the $3.5 million." R. 327, PageID 2145. The true portion of the loss amount, at least as determined initially by the district court, was ninety percent of $4.1 million and therefore exceeded $3.5 million.

Court nor a majority of this court has recognized an as-applied Sixth Amendment challenge to this fact-finding. *Id.* Thus, even if we credited Roberts's argument and found error, it would be neither obvious nor clear. *Id.*; *Vonner*, 516 F.3d at 386.

### E. Procedural reasonableness

Roberts also challenges the procedural reasonableness of his sentence, attacking the district court's application of six sentencing enhancements, and the adequacy of its explanations in choosing to apply them. Because Roberts again failed to object, we review for plain error. *United States v. Penson*, 526 F.3d 331, 337 (6th Cir. 2008).

*Loss value*. Roberts challenges the adequacy of the district court's ruling on the amount of loss attributable to his theft, *see* Fed. R. Crim. P. 32(i)(3)(B), specifically alleging that the court relied on an incorrect valuation of the loss amount, failed to distinguish between stolen army equipment and legally trafficked items, and mistakenly attributed some of the items to Roberts rather than his coconspirators.

When a defendant actively disputes a factual portion of the presentence report that might affect his sentence, the district court must affirmatively rule on the matter and "may not merely summarily adopt the factual findings in the presentence report or simply declare that the facts are supported by a preponderance of the evidence." *United States v. White*, 492 F.3d 380, 415 (6th Cir. 2007); Fed. R. Crim. P. 32(i)(3)(B). Our cases require "literal compliance" with Rule 32 and mandate that sentencing courts explain their calculation methods, *id.*, ensuring that "defendants are sentenced on the basis of accurate information and provid[ing] a clear record for appellate courts," *United States v. Tackett*, 113 F.3d 603, 613–14 (6th Cir. 1997). This calculation need only reasonably estimate the loss, but it must reflect the district court's work in arriving at it. USSG § 2B1.1 cmt. n.3(C); *United States v. Poulsen*, 655 F.3d 492, 513 (6th Cir. 2011).

Roberts challenged the presentence report's calculation of the loss amount. The government contends that the district court adequately explained its findings, but we disagree. At sentencing, the district judge repeatedly asked Perry to explain how she could assume that ninety percent of the items sold on eBay had been stolen, expressing discomposure when Perry

replied that she had not itemized the stolen equipment and could not provide the court with any documentation supporting her testimony. R. 237, PageID 2142–44. "I'm just trying to find out how you arrived at these numbers," the judge repeated, "[a]nd you testify with great enthusiasm as to [these numbers], but if you go into much deeper than that, you hit a stump." *Id.* at 2144.

But the judge moved on almost immediately, accepting Perry's best guess at estimating the loss value: "The Court finds that 80 percent of Exhibit 1 was illegal; 80 percent of $1.4 million and 90 percent of the $3.5 million. Okay. Thank you." R. 327, PageID 2145. Quite plainly, "a district court implicitly adopt[ing] the United States' reasoning as part of its findings does not suffice" for the purpose of Rule 32. *United States v. Griffin*, 656 F. App'x 138, 142 (6th Cir. 2016); *see also White*, 492 F.3d at 418. In *United States v. Nelson*, for instance, we found that a district court's bare recitation that he "had an opportunity to review the submissions by both the defendant and the government and . . . concluded that the government is correct and that it is no longer necessary to go through the exercise of doing further research," did not reveal how the district court determined the government accurately calculated the loss, nor did it respond to Nelson's specific objections. 356 F.3d 719, 723 (6th Cir. 2004).

"[I]t is not [a reviewing] court's duty to supply reasons for the district court's sentencing decision." *United States v. Fowler*, 819 F.3d 298, 306 (6th Cir. 2016). Because this error drove the court's enhancement of Roberts's sentence, it affected his substantial rights. *See United States v. Cotton*, 535 U.S. 625, 633 (2002) ("affecting substantial rights" means that the error "affected the outcome of the district court proceedings" (internal citation omitted)). Thus, we vacate the loss value enhancement, and remand for resentencing consistent with this opinion.

Finally, should the district court find that the eBay portion of the loss amount is less than $3.5 million, it should reconsider any requests by Roberts for a forensic accountant to aid in determining the loss amount attributable to the other recovered goods.

*Mass-marketing*. Roberts also contends that the district court failed to make the necessary factual findings as to the applicability of a mass-marketing enhancement. But Roberts never challenged the factual foundation of the mass-marketing enhancement, and therefore never triggered Rule 32's affirmative ruling requirement. *United States v. Lang*, 333 F.3d 678, 681

(6th Cir. 2003). He did not specifically allege, for example, that the presentence report incorrectly identified the victim of his fraud. Instead he referenced the Second Circuit's reading of the mass-marketing enhancement as "properly appl[ying] only when the targets of the mass-marketing . . . are also in some way victims of the scheme." *United States v. Lacey*, 699 F.3d 710, 714 (2d Cir. 2012). Though a novel question, it did not put any facts in dispute, and the district court therefore did not procedurally err by failing to address it.

*A person in the business of selling and receiving stolen property*. Here too, Roberts argues that the district court procedurally erred when it failed to resolve the factual dispute over whether Roberts derived income solely from selling stolen goods. But the presentence report left open the possibility that Roberts sometimes sold legitimately-purchased items. It explained that Roberts qualified for the USSG § 2B1.1(b)(4) enhancement because he trafficked volumes of stolen goods, maintained a large inventory in a storage unit, involved a number of coconspirators, and facilitated and encouraged other thefts from the military. USSG § 2B1.1 cmt. n.5. Thus, with no factual disagreement to resolve, nothing triggered the district court's responsibility under Rule 32 to adequately explain its findings. *United States v. Treadway*, 328 F.3d 878, 886 (6th Cir. 2003).

*Leadership*. Roberts contends that the district court again failed to make the required findings under Rule 32 that he organized or led "a criminal activity that involved five or more participants" sufficient to enhance his sentence under USSG § 3B1.1(a). As before, Roberts failed to raise a factual dispute below, and did not trigger Rule 32's requirements. To put a fact in dispute, a defendant must "produce more than a bare denial" or suggest a different enhancement. *Lang*, 333 F.3d at 681.

*Sophisticated means*. Next, Roberts asserts that the district court procedurally erred and violated Rule 32(h) when it imposed a two-level enhancement under USSG § 3B1.1(b)(10)(C) rather than (10)(B) without notifying counsel beforehand. Rule 32(h) requires that before a court departs from the applicable sentencing range on a ground that neither the presentence report nor the party's prehearing submissions raise, "the court must give the parties reasonable notice that it is contemplating such a departure." Our cases teach, however, that a district court's sua sponte decision to apply a Guidelines provision under one subsection rather than another does not

qualify as a "departure" requiring notice. *United States v. Bathily*, 392 F. App'x 371, 375 (6th Cir. 2010) (collecting cases); *see also United States v. Hayes*, 171 F.3d 389, 393 (6th Cir. 1999) (the district court need not supply notice when it "plans to *apply* the Guidelines in a manner different from what is recommended in the presentence report"). We therefore find no error here.

*Obstruction.* Finally, Roberts challenges the district court's imposition of an obstruction of justice enhancement under USSG § 3C1.1. The district court, he claims, both failed to make necessary factual findings after Roberts challenged the enhancement, and incorrectly relied on the jury's verdict to determine that Roberts lied at trial.

Supreme Court strictures protect a defendant's right to testify by tightly circumscribing the circumstances under which a district court may enhance a sentence for willfully presenting false testimony at trial: "if a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition we have set out." *United States v. Dunnigan*, 507 U.S. 87, 95 (1993). Best practices would have a sentencing judge "address each element of the alleged perjury in a separate and clear finding." *Id.* Yet the Supreme Court confirmed that it would uphold applications of an obstruction enhancement if a court fulfills *Dunnigan*'s broad mandate and "makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury." *Id.*

To fulfill *Dunnigan*'s directive, this circuit instituted two requirements for a district court imposing an obstruction enhancement for perjury: "first, it must identify those particular portions of the defendant's testimony that it considers to be perjurious, and second, it must either make specific findings for each element of perjury or at least make a finding that encompasses all of the factual predicates for a finding of perjury." *United States v. Sassanelli*, 118 F.3d 495, 501 (6th Cir. 1997) (internal quotations omitted).

Our cases recite firm rules, instructing that we will not "review [a] record independently to make our own findings and infer that the district court had the same statements in mind."

*United States v. Chance*, 306 F.3d 356, 389–90 (6th Cir. 2002).  Nor will we neglect *Dunnigan*'s independent-finding mandate, affirming "on an inference that [an enhancement] was based upon the government's arguments."  *United States v. McRae*, 156 F.3d 708, 713 (6th Cir. 1998); *see also United States v. Warner*, 646 F. App'x 478, 480 (6th Cir. 2016).  But while we sometimes insist on rigid adherence to these rules, *see United States v. Macias-Farias*, 706 F.3d 775, 783 (6th Cir. 2013), other times we've affirmed on less work, "so long as the record below is sufficiently clear to indicate those statements that the district court considered to be perjurious and that the district court found that those statements satisfied each element of perjury," *Sassanelli*, 118 F.3d at 501.  We have even concluded that a colloquy or other contextual clues can satisfy the *Dunnigan* test.  *See United States v. Roman-Oliver,* 564 F. App'x 156, 165 & n.2 (6th Cir. 2014).

In *United States v. Clark*, we held that "the better practice, *and the requirement that should be followed hereafter*, is that, when assigning points for obstruction of justice, the district court should identify specifically which statements or actions by a defendant constitute an obstruction of justice."  982 F.2d 965, 970 (6th Cir. 1993) (emphasis added).  Regardless of interim cases that may lean a different way, we follow *Clark*'s binding precedent here.  *See Darrah v. City of Oak Park*, 255 F.3d 301, 310 (6th Cir. 2001); *see also Macias-Farias*, 706 F.3d at 783.

The district court made no findings whatsoever.  Roberts challenged the obstruction enhancement both before and during sentencing, triggering the judge's obligation to "make independent findings necessary to establish" that the defendant *willfully* and *materially perjured* himself.  *Dunnigan*, 507 U.S. at 95.  But after hearing brief argument from both parties at sentencing—and in direct response to the government's admonishment that the Sixth Circuit requires a specific finding for an obstruction enhancement—the district judge uttered just eleven words: "The Court makes a specific finding that the defendant testified falsely."  R. 327, PageID 2154.

This fails to satisfy the most forgiving reading of *Dunnigan*.  Even in cases where we parse colloquies between the government and the court to find that the district court made independent findings of perjury, district judges have done more to prove that they *independently*

arrived at a conclusion, adhering to *Dunnigan*'s law if not *Clark*'s gloss. *See, e.g.*, *United States v. Ledezma*, 26 F.3d 636, 644 (6th Cir. 1994) (court explicitly referenced the government's argument and concluded that the defendant perjured herself)[2]; *United States v. Rhodes*, 314 F. App'x 790, 795 (6th Cir. 2008) (discussing particular testimony and finding it false); *United States v. Thomas*, 272 F. App'x 479, 488 (6th Cir. 2008) (court detailed three specific instances in which the defendant's testimony contradicted other, more believable testimony); *United States v. Hover*, 293 F.3d 930, 935 (6th Cir. 2002) (explicitly noting that the district court reviewed the transcript and concluded that, "[the defendant] committed perjury" and that "[t]here's no reason to repeat what the government just said and [the prosecutor] just said because that's exactly what the transcript reflects. Clearly greatly at odds with all the evidence in this case."); *United States v. Hooper*, 65 F.3d 169, 1995 WL 514649, at *5 (6th Cir. Aug. 29, 1995) (per curiam) (table) (at sentencing, judge discussed why he determined that the defendant lied on the stand, thereby meriting the obstruction enhancement).

The district court plainly, clearly, and obviously erred. It did no independent work— certainly not enough to satisfy the *Dunnigan* requirements. Our controlling precedent provides clear direction when a district judge fails to make independent findings: we will not rely on inference to deduce what he considered when he imposed the enhancement. Otherwise, we risk eroding *Dunnigan*'s safeguards. True, "there is a sizeable gap between good sentencing practices and reversibly bad sentencing practices," *Vonner*, 516 F.3d at 389, but this is the latter.

We will not make "factual findings of perjury in the first instance, even if we believe there is evidence in the record that supports such findings." *Macias-Farias*, 706 F.3d at 782–83. We thus vacate the obstruction enhancement and remand for the district court either to find on the record that Roberts "(1) made a false statement under oath (2) concerning a material matter (3) with the willful intent to provide false testimony, or to resentence him . . . without the obstruction-of-justice enhancement." *United States v. Warner*, 646 F. App'x 478, 480–81 (6th Cir. 2016) (per curiam) (internal citations omitted).

---

[2]We distinguish *Ledezma* on its facts, but also note that though *Ledezma* purports to follow *Clark*, it has established a disturbing practice where we look only to colloquies between the court and counsel to satisfy *Dunnigan*, essentially abrogating the district court's responsibility to identify specific statements as perjurious. *Id.* *Clark* clearly permits no such thing. *See Sassanelli*, 118 F.3d at 501.

**F. Substantive reasonableness**

Roberts also challenges the substantive reasonableness of his sentence, alleging that the district court impermissibly accounted for the probability that good-time credit would decrease his effective imprisonment. We consider a sentence "substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). Our ordinary abuse of discretion standard applies. *Vonner*, 516 F.3d at 397.

No such abuse of discretion occurred here. When it imposed Roberts's sentence, the district court explained that Roberts would probably spend only about twelve years of it in prison, "[a]nd 12 years to a man locked up is a long time. I think that's long enough." The court did not, as Roberts alleges, consider good-time credit as a stand-alone factor in fashioning the length of the sentence. *See United States v. Al-Din*, 631 F. App'x 313, 338 (6th Cir. 2015) (affirming where the district court similarly did not consider good-time credit as a stand-alone factor). The mention of the availability of good-time credits does not render the sentence substantively unreasonable, although we do not comment on the substantive reasonableness of the sentence the district court will issue upon remand.

**III.**

We VACATE the loss enhancement under USSG § 2B1.1(b)(1)(J) and the obstruction enhancement under USSG § 3C1.1, and REMAND for further proceedings consistent with this opinion. As for the other sentencing enhancements, the evidentiary ruling, denial of CJA funds, and the substantive reasonableness of Roberts's sentence, we AFFIRM.